[Civ. No. 64278. Second Dist., Div. Four. July 20, 1982.]

PINEWOOD INVESTORS, Plaintiff and Respondent, v.
CITY OF OXNARD, Defendant and Appellant.

COUNSEL

K. Duane Lyders, City Attorney, and Mark G. Sellers, Deputy District Attorney, for Defendant and Appellant.

Greenberg & Glusker, Norman H. Levine and James E. Hornstein for Plaintiff and Respondent.

## OPINION

**McCLOSKY, J.**—The City of Oxnard (City) appeals from a judgment of the Superior Court of Ventura County granted under Code of Civil Procedure section 437c following the granting of a summary judgment against it in favor of respondent Pinewood Investors, a limited partnership, (Pinewood), in the sum of $59,878 together with interest and costs. The sum of $59,878 represented that amount of the total of $80,000 Pinewood paid City under protest for sewer connection fees as a condition of obtaining its building permit from City.

### I

#### FACTS

In January 1977, Pinewood entered into a contract to purchase from the Oxnard Housing Authority a parcel of land owned by the authority for development purposes. The parties opened an escrow, which closed on July 13, 1978, nearly eight months after the originally scheduled closing date. At all times during the period of the escrow, the City informed Pinewood that, in order to obtain a building permit, Pinewood would be required to pay a sewer connection fee of $20,122.

On July 11, 1978, the Oxnard City Council adopted Resolution No. 7380 which purported to be effective July 12, 1978, and increased the sewer connection fees payable by "any person desiring to connect property to the City sewerage system." The resolution was not adopted as an emergency measure, nor was there any advance notice given of the council's intent to adopt the resolution.

On July 13, 1978, Pinewood obtained its building permit from the City. At that time, Pinewood learned that the necessary sewer connection fee had been increased by approximately 297.5 percent, to $80,000. Pinewood paid the $80,000 under protest, and on or about August 1, 1980, filed its claim against the City, seeking reimbursement of $59,878, the difference between the $80,000 fee it paid under protest

and the $20,122 it had been informed was the charge for sewer connection fees. On September 17, 1980, the City rejected Pinewood's claim.

On October 17, 1980, Pinewood filed its complaint, alleging Resolution No. 7380 was void and illegal, and seeking a refund of $59,878 plus interest and costs. On July 2, 1981, Pinewood filed its motion for summary judgment. After a hearing, the trial court issued its order granting summary judgment against City in favor of Pinewood. Judgment was entered on August 20, 1981.

When Pinewood's attorney telephoned appellant's city attorney in April 1980 and pointed out the ordinance requirement of Health and Safety Code section 5471, the appellant immediately adopted an urgency ordinance on April 15, 1980, attempting to reestablish the fees by that method.

## II

### CONTENTIONS

Appellant City contends that the trial court should not have granted the summary judgment, because: (1) Estoppel and waiver are triable issues of fact; (a) that by accepting the benefits of approval of its subdivision map, issuance of building permits, and connection to City's sewer system, Pinewood is estopped from challenging the validity of the fee and (b) Pinewood's conduct after payment constituted a waiver of any right to claim a refund; (2) A payment must be truly "under protest" and not a voluntary act; (3) Under Government Code section 38900 or its police power, a city has the authority to charge sewer fees of Health and Safety Code section 5471; and (4) Payment of new sewer fee was authorized by the California Environmental Quality Act (hereinafter CEQA) to mitigate environment impacts.

## III

### DISCUSSION

 Appellant contends that respondent "Pinewood paid the fees and proceeded with the construction of its development without objection." It contends further that Pinewood's first written protest was not received by City until November 1978. The simple answer to this contention is that City admitted in its answer to the complaint that Pinewood paid the sewer connection fee under protest, as required by Health and Safety Code section 5472.

In paragraph 7 of the complaint, respondent alleged that: "7. On or about July 13, 1978, the escrow between the Oxnard Housing Authority and Pinewood closed, and title to the Pinewood property was transferred to Pinewood. On that date, Pinewood applied for and was issued a building permit for the Pinewood property and paid the necessary fees required to obtain the permit. At that time, for the first time, Pinewood was advised that instead of the $20,122 for the sewer connection fees which would have been charged prior to July 11, 1978, the amount of such sewer connection fees was assessed at $80,000 based on the terms of Resolution No. 7380. *Pinewood paid such sewer connection fee of $80,000 under protest.*" (Italics added.)

In paragraph 5 of its answer, the City responded as follows: "5. In answering paragraph 7, *this defendant admits the allegations contained in said paragraph*, except for the allegation that Pinewood 'for the first time' was advised of the increased fees on July 13, 1978, which allegation is denied in that this defendant is without sufficient information or belief to enable it to answer said allegation." (Italics added.)

Code of Civil Procedure section 437c provides that a summary judgment "motion shall be supported or opposed by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken." Thus the City's answer admits and establishes that Pinewood paid the increased sewer fee under protest. The court in *Walker v. Dorn* (1966) 240 Cal.App.2d 118 [49 Cal. Rptr. 362], states the well settled rule: "'A judicial admission in a pleading (either by affirmative allegation or by failure to deny an allegation) is entirely different from an evidentiary admission. The judicial admission is not merely evidence of a fact; it is a conclusive concession of the truth of a matter which has the effect of removing it from the issues.'" (*Id.*, at p. 120.)

Pinewood's payment under protest was permissible under Health and Safety Code section 5472, which provides in pertinent part that: "After fees, rates, tolls, rentals or other charges are fixed pursuant to this article, any person may pay such fees, rates, tolls, rentals or other charges under protest and bring an action against the city or city and county in the superior court to recover any money which the legislative body refuses to refund . . . ."

Appellant now asks us to conclude that as "[a]ctions for recovery of erroneously collected taxes or fees are equitable in nature and governed by equitable principles, City can successfully raise the defense of estoppel." The fatal flaw in City's estoppel argument is that City has admitted in its answer that Pinewood paid the fees under protest.

As City did not ask to be, and has not been, relieved of this admission, it is not in issue and we must accept City's judicial admission that Pinewood paid the fees under protest. That being so City's argument as to estoppel and waiver necessarily fails.

There can be no estoppel where any one of the elements for it is missing. (See *Johnson v. Johnson* (1960) 179 Cal.App.2d 326 [3 Cal. Rptr. 575]; *County of El Dorado v. Al Tahoe Investment Co.* (1959) 175 Cal.App.2d 407, 411 [346 P.2d 205].) As *California Sch. Employees Assn. v. Jefferson Elementary Sch. Dist.* (1975) 45 Cal.App.3d 683, 692 [119 Cal.Rptr. 668] explains: "... in order to establish the claim or defense based on equitable estoppel there must be: (1) *a representation or concealment of material facts*; (2) made with knowledge, actual or virtual, of the facts; (3) to a party ignorant of the truth; (4) *with the intention that the latter act upon it*; and (5) *the party must have been induced to act upon it* (*California Milling Corp. v. White* (1964) 229 Cal.App.2d 469, 479 [40 Cal.Rptr. 301]. See also: *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 555 [76 Cal.Rptr. 529]; *Banco Mercantil v. Sauls Inc.* (1956) 140 Cal.App.2d 316, 323 [295 P.2d 55]; 7 Witkin, Summary of Cal. Law (1974 ed.) § 132, pp. 5351-5352). Where one of these elements is missing there can be no estoppel ...." (Italics in original.) As the payment made by Pinewood was made *under protest*, it could not have misled City. It could not have more clearly called to City's attention that it was paying the fee under compulsion, but preserving its rights. Appellant asserts in its reply brief that "[i]t is a general rule of life that whenever fees are raised everyone protests. More is involved in disproving reliance than just protesting." We respect this erroneous premise. While it is true that many, if not everyone, complains "whenever fees are raised," it is specious to assert that that is the legal equivalent of City's judicial admission therein that the payment in this case was made under protest. The trial court did not err in rejecting appellant's estoppel argument.

## IV

### WAIVER

■ Appellant contends that developer's conduct after payment constituted a waiver of any right to claim a refund. That contention is without merit. To the extent that it is bottomed on the same faulty premise as City's contention regarding estoppel, that is that "Pinewood did not object to this [increased fee] condition" it is rejected for the same reason we reject the estoppel. Appellant's second basis for claiming a waiver is not only that Pinewood did not object to the increased fee condition, but also that "Pinewood voluntarily waived a right to a refund by building the project and not seeking any expedited remedy (as required under the Subdivision Map Act, Gov. Code, § 66499.37) to compel the city act in the alleged proper manner."

Section 5472 of the Health and Safety Code specifically authorizes the procedures Pinewood followed in making payment under protest and then bringing the instant action to recover the fees appellant refused to refund.

In pertinent part that section provides: "After fees ... are fixed pursuant to this article, any person may pay such fees ... UNDER PROTEST AND BRING AN ACTION AGAINST THE CITY ... in the Superior Court to RECOVER ANY MONEY the legislative body refuses to refund ...." (Emphasis added.) That is what respondent has done. Waiver is "the intentional relinquishment of a *known right*." (7 Witkin, Summary of Cal. Law (8th ed. 1973) Equity, § 133, p. 5353.) Respondent followed the method prescribed by that section and did not relinquish its right to bring this action. It did not mislead City and its payment under protest and then proceeding under its building permit could not amount to waiver.

■ Section 437c of the Code of Civil Procedure sets forth the well-established guidelines for summary judgment procedures. "'The matter to be determined by the trial court in considering such a motion [for summary judgment] is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself ... doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of deter-

mining facts.' (*Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 . . . .)" (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]; see also, *Central Mutual Ins. Co. v. Del Mar Beach Club Owners Assn.* (1981) 123 Cal.App.3d 916, 922 [176 Cal.Rptr. 895].)

██ ██ While waiver and estoppel usually present questions of fact, none of any materiality are presented here in view of the admissions in the City's answer. ██ While City urges that it pleaded estoppel and waiver, the purpose of a motion for summary judgment is "to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues" (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [176 Cal.Rptr. 895]) and "to eliminate sham and baseless claims and pleadings." (*Scherer* v. *Mark* (1976) 64 Cal.App.3d 834, 843 [135 Cal.Rptr. 90].)

## V

Appellant's next contention is that under Government Code section 38900 or its police power a city has the authority to charge sewer fees of Health and Safety Code section 5471.

██ It is well settled that a city such as appellant has the authority to charge reasonable sewer fees providing it does so in a lawful manner. We consider here whether it did so. Appellant urges that its legislative branch may make legislative enactments by "ordinance" or "resolution." ██ Under certain prescribed circumstances that is true, but where a statute requires that a matter be adopted by ordinance, adoption by resolution renders the enactment invalid. (*City of Sausalito* v. *County of Marin* (1970) 12 Cal.App.3d 550, 566 [90 Cal.Rptr. 843].)

██ Resolution No. 7380 was an attempt to adjust Oxnard's sewer connection fees. California law requires, however, that sewer connection fees be set and revised by ordinance, not by resolution. Health and Safety Code section 5471 provides in pertinent part that: "Any entity shall have power, by an ordinance approved by a two-thirds vote of the members of the legislative body thereof, to prescribe, revise and collect, fees . . . including sewer standby or immediate availability charges, for services and facilities furnished by it, either within or without its territorial limits, in connection with its sanitation or sewage system . . . ." Resolution 7380 clearly did not meet the requirements of Health and Safety Code section 5471.

Could appellant lawfully accomplish the same result by its Resolution No. 7380 under Government Code section 38900 or its police power as appellant urges? We think not.

The effect of Health and Safety Code section 5471 is clearly specific as to the method to be employed to charge these fees. It must be (1) by an ordinance, (2) approved by a two-thirds vote of the members of the legislative body involved, and (3) by other law, must conform to the legal requirements for enacting an ordinance. As appellant concedes on page 13 of its opening brief: "An ordinance has a first reading and is adopted at least five days later by the legislative body. Thereafter it is published. (Gov. Code, § 36934.) Depending upon the subject matter of the ordinance, it is either effective immediately or thirty days after its adoption. (See Gov. Code, § 36937.) A resolution may be adopted by vote of the legislative body at the time it is presented and is effective immediately without publication."

It is thus clear that a resolution adopted without the formality required of an ordinance cannot be deemed an ordinance or its legal equivalent. A resolution of a legislative body is ordinarily not equivalent to an ordinance. It is usually a mere declaration with respect to future purpose or proceedings of that body. (*City of Sausalito* v. *County of Marin, supra*, 12 Cal.App.3d at p. 565.)

The *City of Sausalito* case held the resolution purporting to make a zoning change invalid because the applicable statute there (Gov. Code, § 65850) required that such change be by ordinance even though the resolution was adopted by the legislative body there involved after noticed hearings and the majority required to pass an ordinance.

If the city council had enacted the substance of Resolution No. 7380 by ordinance it would have had to: (1) publish the text of the measure at least five days before it was to be adopted (Gov. Code, § 36933, subd. (c)); (2) introduce the measure at least five days before it was passed (Gov. Code, § 36934); (3) publish the measure within fifteen days of its adoption (Gov. Code, § 36933); and (4) make it effective no less than thirty days after its passage (Gov. Code, § 36937), which would have allowed respondent to pay the sewer connection fee before the effective date of the ordinance increasing that fee.

Appellant urges that Health and Safety Code section 5471 is not the exclusive statutory provision governing the enactment of sewer connec-

tion fees. It urges that article XI, section 7, of the California Constitution permits a city to "make and enforce within its limits all local police, sanitary, and other ordinances and regulations not in conflict with general laws." That section provides for "a limited delegation of the police power to cities," and does not enable a municipality to ignore a specific governing statute dealing with a particular subject. (*City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 754 [154 Cal.Rptr. 374].) Nor does Government Code section 38900 relieve City of its obligation to comply with the procedural requirements of the Health and Safety Code. That section merely provides: "A city legislative body may construct, establish and maintain drains and sewers." It makes no reference to establishing or revising sewer fees, and must be read in conjunction with Health and Safety Code section 5471.

## VI

Lastly appellant contends that payment of new sewer fee was authorized by the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA) to mitigate environmental impacts.

Appellant was operating from the premise that Pinewood's project required an Environmental Impact Report (pursuant to Pub. Resources Code, § 21080) and that to mitigate these impacts issuance of Pinewood's permit was conditioned upon Pinewood's obligation to pay a per unit connection fee, by condition No. 50 which provided that "[t]he subdivider shall pay standard sewer connection fee as required in chapter 25, article 11, of the Oxnard City Code prior to obtaining any building permit" and that Pinewood proceeded with its project after those fees were raised. Appellant urges that it cannot mitigate these impacts as the original Environmental Impact Report indicated and the report thus becomes misleading. It cites *County of Inyo* v. *City of Los Angeles* (1977) 71 Cal.App.3d 185, 192 [139 Cal.Rptr. 396] for the proposition that: "The EIR is the heart of the environmental control process .... CEQA describes the report's purpose—to provide the public and governmental decision-makers ... with detailed information of the project's likely effect on the environment; to describe ways of minimizing significant effects ...."

The *authority* of appellant to raise the sewer connection fees, if done in a lawful manner, is not in question. Appellant, however, has cited us to no authority, and our research has disclosed none, which excuses ap-

pellant's compliance with the requirements specified in other statutes, among which is Health and Safety Code section 5471. Appellant had the authority to raise the sewer connection fees, but only by complying with the ordinance requirement of section 5471. ■ It is a settled rule of statutory construction that a special statute dealing with a particular subject controls and takes priority over a general statute. (See *Lacy* v. *Richmond Unified Sch. Dist.* (1975) 13 Cal.3d 469, 472 [119 Cal.Rptr. 1].) Health and Safety Code section 5471 is the specific statute and takes priority over the general authorization of Government Code section 38900 and is in no way contrary to article XI, section 7 of the California Constitution.

We find no abuse of discretion by the trial judge.

The judgment is affirmed.

Kingsley, Acting P. J., and Amerian, J., concurred.