[No. C060456. Third Dist. Mar. 1, 2010.]

YVETTE MARQUEZ, Plaintiff and Appellant, v.
MEDICAL BOARD OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Sanders Firm and Justin H. Sanders for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Steven V. Adler and Heidi R. Weisbaum, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**NICHOLSON, J.**—"Close enough for government work" is an insulting and often unfounded stereotype which we decline to perpetuate in this case. A

statute may impose on a government agency what first appears to be a technical formality, but such a requirement may serve to check delegations of power both to and by the agency, as it does here. Ignoring a statutory mandate nullifies the Legislature's valid purposes and results in tangible harm. If a statute requires an agency to dot its "i's" and cross its "t's," the Legislature's will must be done.

█ Despite a statute requiring it to do so, defendant Medical Board of California (the Board) has never established by resolution the passing score required for the examination used to license people to practice medicine in California. Plaintiff Yvette Marquez took the last part of the examination in May 2008 and was notified she had failed based on the passing score recommended by the national board that administers the examination. She filed a petition for writ of mandate seeking an order to compel the Board to comply with the statute, deem her to have passed, and issue her a license. The trial court denied the petition.

We reverse. Plaintiff is entitled to an order directing the Board to comply with the statute. Although she is not also entitled to an order deeming her to have passed, she is entitled to take the examination again.

## FACTS

Because the facts are not in dispute, we rely primarily on the trial court's findings of fact. Plaintiff is a graduate of Stanford University and the University of Rochester School of Medicine and Dentistry. As of September 2008, she had completed her second year of a seven-year residency in neurosurgery at the Los Angeles County Hospital and University of Southern California Medical Center. She is not licensed to practice medicine.

The Board is the administrative agency responsible for licensing physicians and surgeons in California. It oversees examinations required for obtaining a license to practice medicine.[1]

One of those examinations is the United States Medical Licensing Examination (USMLE). This examination was developed by the National Board of Medical Examiners (NBME) and the Federation of State Medical Boards (FSMB), of which the Board is a member. The USMLE's purpose is to provide state licensing agencies such as the Board with a common evaluation system for applicants for initial medical licensure.

The USMLE consists of three parts. The applicant must obtain a passing score on all three parts. Also, an applicant must pass "Part III" of the USMLE

---

[1] A license to practice medicine issued by the Board is formally known as a Physician's and Surgeon's Certificate.

on no more than four attempts in order to be eligible for a license. (Bus. & Prof. Code, § 2177, subd. (c)(1).)[2]

The FSMB, which administers the USMLE, establishes a recommended minimum passing score for the USMLE which a state may use to grade its applicants. Official USMLE materials state that: "Individual licensing authorities may accept the USMLE-recommended pass/fail result or may establish a different passing score for their jurisdiction."

In California, sections 2184 and 2177 require the Board to establish a passing score by resolution. Section 2184 requires a candidate to obtain "a passing score, established by the division pursuant to Section 2177." (§ 2184, subd. (a).) In turn, section 2177 states: "A passing score is required for an entire examination or for each part of an examination, as established by resolution of the Division of Licensing." (§ 2177, subd. (a).)[3]

Since adopting the USMLE for use in California, the Board has not adopted a resolution or taken any specific, formal action setting a passing score for the USMLE. Instead, the Board has accepted the recommended passing score established by the FSMB as the standard to be applied to California applicants. The Board has not adopted a resolution or policy stating that fact.

On March 8, 2008, plaintiff registered to take Part III of the USMLE through the USMLE Web site. At that time, the USMLE passing score recommended by the FSMB and utilized by the Board for Part III was 184. The USMLE Web site disclosed this score. The USMLE Bulletin of Information, available at the Web site at the time plaintiff registered and at all times thereafter, also stated that the "recommended minimum passing level is reviewed periodically and may be adjusted at any time. Notice of such review and any adjustments will be posted at the USMLE website."

On April 15, 2008, a notice appeared on the Web site stating that the minimum passing score for Part III had been raised from 184 to 187. The notice also stated the new passing score would be applied to all Part III examinations administered on or after May 1, 2008.

Plaintiff took the Part III examination on May 13, 2008, and she received a score of 184. Because this was the fourth time she had not passed the Part III

---

[2] Further undesignated references to sections are to the Business and Professions Code.

[3] Prior to 2008, the Board consisted of two divisions; a Division of Medical Quality, responsible for physician discipline, and a Division of Licensing, responsible for licensing physicians. In 2008, the divisions ceased to exist, and the Board became responsible for discipline and licensing. (§ 2004.) Statutory references to either of the former divisions refer to the Board. (§ 2002.)

examination, the Board informed her she was not eligible for a license. The Board subsequently denied plaintiff's request for a waiver from the four-attempt limitation of section 2177, subdivision (c)(1), and it denied her request for a formal hearing on the matter.

Plaintiff filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1085 seeking an order directing the Board to issue her a license. The trial court denied the petition. Acknowledging the Board had never adopted a resolution establishing a passing score, the court nonetheless determined the Board implicitly adopted the USMLE's score as the passing score when it adopted the USMLE, and that this satisfied the requirements of section 2177. The court reasoned: "[B]y adopting an examination developed and administered by an organization that had a practice of establishing its own recommended minimum passing score, [defendant] Board also effectively adopted that standard, including any changes that might be made to that standard from time to time, while reserving the right to review the standard over time. Although the intent to do so was not stated explicitly in [defendant's] formal action approving the USMLE, given the fact that the examination came with its own passing score standards, which could be changed from time to time, such intent was implicit therein."

The court also stated the Board's intent to adopt the USMLE's passing score was further shown by the Board's subsequent actions. The Board had accepted the USMLE's recommended score as the passing score in California since adopting the USMLE in the early 1990's. In addition, at its May 1999 meeting, the Board received a report on the December 1998 administration of the Part III examination. The Board noted the examination had a passing rate of 75 percent, a rate that was consistent with rates of previous examinations. The trial court stated this incident showed the Board had considered the appropriateness of the score used at that time to determine the passing rate and had left it unchanged.

The trial court also rejected plaintiff's argument that the Board had unlawfully delegated to the USMLE the Board's duty to establish the passing score. The court determined the Board had retained the ultimate power to determine the passing score for itself. This was demonstrated when the Board considered the passing rate at its May 1999 meeting.

Plaintiff also claimed the Board denied her due process and violated state open meeting laws when it raised the passing score in 2008 and did not give her personal notice of the change. The court rejected those arguments as well.

She now appeals from the trial court's judgment. She claims the trial court erred when it:

(1) determined the Board had complied with section 2177;

(2) considered the interests of third parties;

(3) determined the Board had not unlawfully delegated its duty to establish a passing score to the USMLE;

(4) determined plaintiff's due process rights were not violated by not receiving personal notice of the new score; and

(5) determined the Board did not violate state open meeting laws when the new score was established.

## DISCUSSION

### I

*Standard of Review*

Where the facts are not in dispute and we are confronted only with questions of law on appeal from a denial of a writ of mandate, our review is de novo. (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 619 [113 Cal.Rptr.2d 309].)

### II

*Section 2177*

Plaintiff claims the trial court erred when it determined the Board had satisfied section 2177 by impliedly adopting the passing score when it adopted the USMLE. Plaintiff contends the court's decision fails to enforce the plain meaning of section 2177. She also claims no other actions taken by the Board regarding its adoption and use of the USMLE impliedly satisfied the requirements of section 2177.

The Board acknowledges it has taken no formal action expressly adopting a passing score, but it contends it impliedly adopted a passing score, namely, the USMLE's recommended score, when it approved the USMLE and accepted the USMLE's recommended score, and when it later transferred administrative control over the USMLE to the FSMB. We disagree with the Board.

## A. *Background information*

The record does not disclose exactly when the Board first approved use of the USMLE in California. In its January and May 1992 meetings, the Board received reports on pending legislation that would allow it to administer and accept the USMLE for licensing purposes. The Legislature and the Governor approved that legislation in 1992. (Stats. 1992, ch. 311, p. 1243.)

The first administration of Part III of the USMLE by the Board occurred in June 1994. The Board received a report on that administration at its meeting the following month.

In that same month, July 1994, Board staff recommended that the Board adopt a list of examinations it would accept for licensure and also adopt the passing scores for those examinations. The Board's failure to adopt a policy listing the written examinations accepted for licensure in California and their passing scores created difficulties for applicants and staff. Applicants licensed in other states were challenging staff to cite the statute or regulation that disqualified their examinations from being considered for California licensure. Staff sought to have the Board, pursuant to section 2177, subdivision (a), approve at its next meeting the written examinations that were acceptable for licensure in California and their required passing scores.

At its November 3, 1994, meeting, the Board by oral resolution approved a list of examinations it would accept for licensure purposes in California. The list included all three parts of the USMLE. (By then, the USMLE was the only acceptable examination then being administered in the country.) The Board, however, did not name or establish a passing score for any of the USMLE's parts.[4]

The Board next considered Part III of the USMLE at its February 1999 meeting. Up until that time, the Board had administered Part III in a twice annual, two-day, paper and pencil format. However, after the examination scheduled for May 1999, the FSMB was converting the examination to computer-based testing. State boards would no longer have the responsibility of administering the examination directly to candidates, who could schedule the examination through the FSMB for a convenient time and location throughout the country.

The FSMB offered state boards two options for administering the computerized examination: they could contract to have the FSMB assume responsibility for all aspects of the examination process, including the processing of

---

[4] The list of acceptable examinations now appears at title 16, section 1328 of the California Code of Regulations.

applications and scoring, and thereby eliminate the need for a state board to be involved with any aspect of the examination process, or they could contract to have the FSMB be responsible only for the test's actual administration. The Board voted to approve the full service option.

Meanwhile, at its May 1999 meeting, the Board received a report on the December 1998 administration of the Part III examination. That examination had a passing rate of 75 percent. That rate was consistent with rates of previous examinations.

In June 1999, the Board entered into a contract with the FSMB whereby the FSMB assumed full responsibility for all aspects of the Part III examination in California. The Board retained responsibility only to refer applicants to the FSMB, inform the FSMB of any eligibility requirements it may have in addition to USMLE requirements, and to make final decisions concerning requests for test accommodations. Among its responsibilities, the FSMB agreed to score the completed examinations and to report the scores directly to the examinees and to the Board.

Some four years later, the Board and the FSMB reconfirmed their agreement in a letter of understanding executed in December 2003. The FSMB again committed to fully administer the Part III examination, including to score the examinations and to report the scores.

Since 2003, the Board "has had nothing to do with the administration of the USMLE." According to Kimberly Kirchmeyer, the Board's deputy director, "[t]he Board receives the scores for its applicants and accepts those scores as determinative of whether an applicant has passed the USMLE. To [her] knowledge, the Board has never questioned nor had a reason to question the passing score for the USMLE."

In fact, the Board believes it no longer has the authority to set the passing score, despite section 2177's mandate. The Board's executive director, Barb Johnston, stated in a letter to plaintiff's counsel that even though section 2177 was still valid, the Board could no longer set the passing score because it had delegated that authority to the FSMB. Thus, in Johnston's words, "[d]espite the literal language of the statutes, it would not be appropriate for, nor would the scoring be defensible if the Board were to set the passing score by resolution."

B.  *Discussion*

The Board has not complied with section 2177 in a literal sense: It has never adopted a resolution expressly establishing a passing score or adopting the USMLE's recommended score as a passing score in California.

It adopted a policy naming the USMLE as an authorized examination, but that policy did not include establishing a passing score. Its staff verified the Board had not passed a resolution establishing a passing score. Staff requested the Board do so, but the final resolution did not adopt a passing score or adopt the USMLE's recommended score as the passing score.

The Board later entered into a contract and a subsequent letter of understanding transferring administration and scoring of the USMLE to the FSMB, but none of those agreements expressly approved the USMLE's recommended score as the passing score, nor did they prohibit the Board from establishing or amending the passing score. It is clear the FSMB would score the examinations, but whether the score earned by the candidate was a passing score was, according to the FSMB, a matter to be determined by the Board.

The Board has acquiesced in the USMLE-recommended score as the passing score in California since at least 1994 when it started administering Part III of the USMLE. The May 1999 discussion by the Board of the 1998 USMLE's 75 percent passing rate also indicates the Board had acquiesced in the USMLE-recommended score as the passing score. The Board also transferred all administrative authority over the examination to the FSMB. But still the Board passed no resolution as required by section 2177 expressly adopting the USMLE-recommended score as the passing score in California.

Can section 2177's mandate that the Board establish the passing score by resolution be satisfied impliedly by the Board's consistent acquiescence in the USMLE's recommended score and its transferring of administrative control over the examination to the FSMB? We conclude it cannot. Doing so would negate the statute and render it meaningless.

■ "When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] The words of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.]" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].) "An interpretation that renders related provisions nugatory must be avoided." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ Sections 2184 and 2177 unambiguously require the Board to establish the passing score and to do so by resolution. A resolution is commonly defined as "a formal expression of opinion, will, or intent voted by an official

body or assembled group." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 1061.) A resolution does not require the same formality of enactment as a state statute or local ordinance, such as being initiated by a bill or having more than one reading. (*American Federation of Labor v. Eu* (1984) 36 Cal.3d 687, 708–709 [206 Cal.Rptr. 89, 686 P.2d 609].) But a resolution is adopted by a recorded vote of the governing body in accordance with statutory open meeting and agenda laws. It is usually adopted at the time it is presented, and it is usually effective immediately unless it states otherwise. (See *Pinewood Investors v. City of Oxnard* (1982) 133 Cal.App.3d 1030, 1039 [184 Cal.Rptr. 417].) Unlike a statute, a resolution is temporary in the sense that it does not prevent the governing body from addressing and resolving the issue again in the same manner. (See *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 979–980 [84 Cal.Rptr.2d 179].)

The Legislature used the term "resolution" in section 2177 to require the Board to adopt a passing score by means of a formal, memorialized public vote. This single, unambiguous statutory burden obviously serves to keep the Board accountable to the Legislature, the medical profession, medical license applicants, and the public, and it prevents the Board from delegating this responsibility to anyone else.

By concluding the Board could implicitly fulfill this requirement without the adoption of a formal resolution, the trial court abrogated the statute. If, as the trial court's ruling implies, the Board can default on its burden of public accountability by simply acquiescing in the score utilized by the FSMB, section 2177 is mere surplusage. Adhering to traditional rules of statutory construction, we may not nullify section 2177 in this manner.

The Board claims it effectively adopted the required resolution when it approved administering the USMLE in 1994 and when it transferred administrative control over the examination to the FSMB in 1999 and again in 2003. However, as shown above, a review of the record indicates the Board never addressed the passing score in any of its actions. Staff expressly put the Board on notice in 1994 of its statutory duty formally to adopt a passing score by resolution, but the Board simply approved the USMLE without also adopting the examination's passing score by resolution.

The language used in the 1999 agreement and the 2003 letter of understanding also did not establish the passing score, nor did it delegate the Board's authority to set the passing score to the FSMB. The Board gave the FSMB authority to "score" the examinations, but it did not surrender its authority to determine what score constituted a passing score. Indeed, section 2177 prevented the Board from giving the FSMB the authority to determine what scores were passing scores. The Legislature vested that power exclusively with the Board.

The Board asserts the trial court's decision is consistent with the statutory scheme of the Board's licensing authority. That scheme, found in the Medical Practice Act (§ 2000 et seq.), gave the Board as early as 1980 authority to conduct a licensing examination "under a uniform examination system, and for that purpose the division may make such arrangements with organizations furnishing examination material as it may deem desirable." (§ 2176; Stats. 1980, ch. 1313, § 2, pp. 4445, 4470.) The Board claims this statute's reference to "such arrangements" gave it the authority to acquiesce in the USMLE's recommended passing score, and that such use was implicit in its agreements with the FSMB.

We do not doubt the Board has the authority to adopt the USMLE's recommended score as the passing score. But we have already rejected the Board's claim that it could implicitly adopt that score without passing a resolution. Nothing in the more general provisions of section 2176 obviates the Board's specific mandate under section 2177 to adopt the passing score by resolution.

█ Indeed, since the advent of the USMLE, the Legislature has continued to require the Board to adopt the passing score by resolution. In 2000, the Legislature amended section 2183 of the Medical Practice Act to specify that an applicant must pass the USMLE to obtain a license. (Stats. 2000, ch. 440, § 3.) Under this amendment, which is still law, an applicant must "pass the national examination for medical licensure . . . determined by the Division of Licensing to be essential for the unsupervised practice of medicine." (§ 2183.) And the very next statute, section 2184, requires an applicant to "obtain on the written examination a passing score, established by the [Board] pursuant to Section 2177." (§ 2184, subd. (a).) Thus, no matter what arrangements the Board made with the FSMB, the passing score still had to be established by resolution of the Board.

█ Moreover, in 2006, the Legislature amended section 2177 and preserved the statute's resolution requirement. In this amendment, the Legislature adopted the four-test limit on Part III of the USMLE. Thus, section 2177 now requires an applicant to obtain a passing score "as established by resolution of the Division of Licensing" (§ 2177, subd. (a)), and mandates an "applicant shall have obtained a passing score on Part III of the [USMLE] within not more than four attempts . . . ." (§ 2177, subd. (c)(1).) The amendment indicates indisputably the Legislature continues to intend that the passing score an applicant must obtain is the one set by resolution of the Board.

Thus, there is nothing in the statutory scheme of the Medical Practice Act that authorizes the Board to adopt the passing score by means other than a formal resolution.

■ The Board claims the interpretation and enforcement of section 2177 we decide here elevates form over substance. In this instance, however, the form *is* the substance. One of section 2177's primary purposes is to mandate and formalize the procedure the Board will use to exercise its duty to establish a passing score. The judiciary is tasked with enforcing statutes as they are plainly written. We faithfully adhere to that task. Requiring the Board to adopt the passing score by means of a resolution is the only interpretation that fulfills the Legislature's express intent.

Because we determine the Board has violated section 2177, we need not discuss plaintiff's remaining grounds of appeal except her claim for relief, to which we now turn.

III

*Relief*

In her prayer for relief, plaintiff asked the trial court to issue a writ of mandate compelling the Board to issue her a license and to stay its decision that she did not pass the Part III examination. Her request is unreasonable and overbroad.

Plaintiff argues before us that if the Board failed to establish a different passing score for her examination, then she "indisputably passed the examination because she scored 184," the USMLE passing score that the Board used prior to May 2008. The difficulty with her argument is, of course, the Board never adopted a resolution establishing 184 as the passing score. If 187 is not a valid passing score for the reasons discussed above, and it is not, then neither is 184.

Plaintiff is entitled to an order mandating the Board to comply with section 2177 and adopt a passing score for the USMLE by means of a formal resolution. We cannot, however, order the Board to declare her score of 184 a passing score, as there existed no valid resolution by which that score could be declared a passing score.

With no established passing score, however, plaintiff's May 2008 examination was in effect a futile act. It would be unjust to treat such an examination as a legitimate and, in plaintiff's case, last attempt to become licensed to practice medicine. We thus conclude plaintiff should be offered another opportunity to take the Part III examination after the Board has established a passing score for that examination by resolution. This new examination will be treated as plaintiff's fourth and final attempt to pass the Part III examination.

## DISPOSITION

The judgment is reversed. The trial court is directed to issue a writ of mandate ordering the Board to establish by formal resolution the passing scores for the USMLE and to allow plaintiff to take the Part III examination for a final time once it has established the passing score for that examination. Costs on appeal are awarded to plaintiff. (Cal. Rules of Court, rule 8.278(a).)

Scotland, P. J., and Robie, J., concurred.