[No. G032234. Fourth Dist., Div. Three. June 22, 2004.]

JACK PAUL SAPPINGTON et al., Plaintiffs and Appellants, v.
ORANGE UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Martin J. Kirwan and Francis E. Smith for Plaintiffs and Appellants.

Parker & Covert, Spencer E. Covert and Jonathan J. Mott for Defendant and Respondent.

## OPINION

**O'LEARY, J.**—Retired "leadership," i.e., administrative, employees of the Orange Unified School District (the retirees) filed this class action lawsuit against their former employer (the District) to contest a perceived reduction in a vested retirement benefit. The trial court found no impairment of a vested contract right and entered judgment for the District. We affirm.

\* \* \*

In causes of action for declaratory and injunctive relief,[1] the retirees seek to compel the District to offer them free health insurance through a "preferred provider organization" (PPO) health benefits plan. The retirees contend they have a vested right to their choice of free coverage under either a "health maintenance organization" (HMO) or PPO plan, by virtue of a policy (Policy 4244.2) adopted in 1976 by the Orange Unified School District Board of Education, the governing body of the District.

Policy 4244.2 states as follows: "The District shall underwrite the cost of the District's Medical and Hospital Insurance Program for all employees who retire from the District provided they have been employed in the District for the equivalent of ten (10) years or longer."

Based on the parties' stipulation of facts for trial, we summarize the various health benefit plans the District offered to retirees pursuant to Policy 4244.2 since 1977, as follows: From 1977 until 1997, the District offered retirees free medical insurance through an ever-changing combination of HMOs, indemnity plans, and PPOs. The particular "menu" of HMOs, indemnity plans, and PPOs offered, as well as the applicable deductibles, copayments, and prescription drug charges paid by retirees under each, changed yearly or biyearly. Despite these regular changes, there was one enduring fact: Through 1997, the District paid the entire subscription cost for whichever plan a retiree chose among those offered that year.

In 1998, in recognition of the spiraling costs of health insurance and the District's own dire financial condition, the District instituted a "buy-up charge" for participation in the PPO plan. In other words, any retiree electing PPO coverage would have to pay the difference in cost between enrolling in

---

[1] The trial court earlier granted the District's motion for summary adjudication of three additional causes of action seeking money damages. Only the causes of action for declaratory and injunctive relief proceeded to trial.

the HMO and the more expensive PPO. The District continued to offer retirees the HMO plan at no cost. The buy-up charge escalated annually, from an initial cost of $49.49 (retiree only)—$63.64 (retiree plus spouse) per month in 1998, to $105.37 (retiree only)—$220.35 (retiree plus spouse) per month by 2002–2003.

The retirees assert the District has been in breach of its contractual obligation under Policy 4244.2 since 1998 by virtue of its requirement retirees pay the buy-up cost for PPO coverage. (The District still offers the HMO plan at no monthly premium.) In suing for declaratory and injunctive relief, the retirees sought to compel the District to continue offering them free coverage under a PPO plan.

The retirees and the District stipulated to trial of the following single controverted issue: "Whether the . . . District based upon Board Policy 4244.2, adopted in October 1976, is required to continue to offer the leadership retirees who were employed by the District for the equivalent of 10 years or longer, and hired prior to July 1, 1992, a free PPO health benefit plan?"

At the close of the retirees' case, and after a defense expert witness, Ronald W. Bennett, testified out of order, the District moved for judgment under Code of Civil Procedure section 631.8. The trial court granted the motion and entered judgment in favor of the District.

In its order, the trial court ruled the retirees "have a vested right to retirement medical benefits" under Policy 4244.2 (the policy). In support of its holding, the court cited California Supreme Court decisions recognizing that promised retirement benefits (in addition to pensions) comprise a part of a public employee's contract of employment and are thus constitutionally protected. (See *Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 852 [179 P.2d 799]; *Miller v. State of California* (1977) 18 Cal.3d 808, 815 [135 Cal.Rptr. 386, 557 P.2d 970].)

The trial court then focused specifically on "the nature of the vested right" and whether it includes "a 'free' PPO." The court construed the language of the policy in light of extrinsic evidence of the parties' course of conduct during the 20 years that preceded the District's purported breach. Specifically, the court took note of the regular changes in the mix of HMOs, indemnity plans, and PPOs offered, with attendant wide fluctuations in the retirees' costs for copayments, deductibles, and prescription drugs. The court also specifically noted the fact the District had offered free coverage under at least one HMO and one PPO/indemnity plan each year.

The court concluded the policy does not obligate the District to offer free PPO coverage. In essence, the court construed the policy as a promise to offer at least *one* health insurance plan for which retirees pay no monthly premiums ("a District underwritten medical insurance plan"), and the court found the District's offer of free HMO coverage satisfies this contractual obligation. Because the court found the retirees have no vested right to free PPO coverage, the court ruled the District can impose the buy-up charge for PPO participation.

The court went further in its ruling, holding that even if the retirees had a vested right to free PPO coverage, the District's imposition of the buy-up charge was a permissible reasonable modification of that vested right. That portion of the court's ruling relied extensively on the testimony of the District's expert, Mr. Bennett.

\* \* \*

On appeal, the retirees argue the trial court erred in interpreting the policy as not requiring the District to offer free PPO coverage as part of its health benefits program. They also contest the court's finding that, assuming arguendo they had a vested right to free PPO coverage, the District properly imposed the buy-up charge as a reasonable modification of that benefit. For the reasons explained below, we find the trial court correctly interpreted the policy as giving the retirees no vested right to free PPO coverage. Given this holding, we need not address the retirees' argument the District impermissibly modified a *vested* benefit.[2]

Our review of the trial court's interpretation of the contract at issue here is governed by familiar rules. In construing the policy, the trial court relied on extrinsic evidence that was not in conflict: the parties *stipulated* to the relevant facts concerning the District's course of conduct in implementing the policy over 20 years. The parties do not dispute this extrinsic evidence; instead, they disagree as to the *inferences* that should be drawn from it. In this circumstance, we engage in de novo review. We make our own independent determination of the meaning of the policy in light of the extrinsic evidence presented. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166 [6 Cal.Rptr.2d 554] ["when the competent parol evidence is not conflicting, construction of the instrument is a question of law, and the appellate court

---

[2] Nor need we address the retirees' objection to the admissibility of Bennett's testimony. His testimony was irrelevant to the dispositive issue: whether the retirees have a vested right to free PPO coverage.

will independently construe the writing"], citing *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Medical Operations Management, Inc. v. National Health Laboratories* (1986) 176 Cal.App.3d 886, 891 [222 Cal.Rptr. 455].)

We begin with the language of the policy itself. It states only that "[t]heDistrict shall underwrite the cost of the District's Medical and Hospital Insurance Program" for eligible retirees. As the basis for a vested right, the policy is curiously brief and unspecific.

■ The retirees assert the District's promise to "underwrite" the cost of insurance constitutes an agreement to pay the entire subscription cost of coverage. However, the dictionary definition of "underwrite" does not support that interpretation. According to Webster's, "underwrite" has various meanings having to do with either writing "under or at the end of something else," assuming a risk of loss, guaranteeing financial support for a venture, or agreeing to purchase a security issue "on a fixed date at a fixed price with a view to public distribution." (Webster's 3d New Internat. Dict. (1981) at p. 2491.) We additionally note that, in common parlance, to "underwrite" an event or program is to provide substantial financial support for it, but not necessarily to bear its entire cost. We conclude the policy's use of the word "underwrite" per se does not constitute a promise to pay the entire cost for enrolling in a District health plan.

Nor does the reference in the policy to "the District's Medical and Hospital Insurance Program" support the retirees' argument as to the intent of the policy. As the District points out, this is a "generic" term that fails to specify the type of health benefit plan or level of benefits promised. In fact, the language is so broad it appears to obligate the District only to provide *a program*—there is no requirement the program include any particular kind of insurance. There is certainly no explicit requirement that the District offer PPO coverage, rather than simply a selection of various HMOs.

■ Tacitly conceding that the language of the policy does not support their position, the retirees turn to the extrinsic evidence of the parties' course of conduct between 1977 and 1997. In essence, the retirees argue that because for those first 20 years the District offered a medical insurance program that gave retirees the choice of free coverage under either an HMO or PPO/indemnity plan, and the retirees "accepted" this benefit, this "conduct" proves the parties interpreted the policy as *requiring* the provision of both a PPO and HMO plan. But the fact the retirees "accepted" the benefit of having

alternative health plans does not mean they understood they were *contractually entitled* to such alternatives. Generous benefits that exceed what is promised in a contract are just that: generous. They reflect a magnanimous spirit, not a contractual mandate.

In their briefs, the retirees fail to cite any evidence that they, individually or as a group, had a reasonable expectation the District would always provide free PPO coverage as part of the medical insurance program. Nor could we find any evidence in the record to support such a claim. There is testimony establishing the retirees relied on the District's promise of free "lifetime" health benefits, but no evidence they believed that promise specifically included free, lifetime *PPO* coverage.

The fact the District provided a free PPO benefit for 20 years—before health insurance premiums skyrocketed and the cost of PPO coverage began far outpacing the cost of HMO coverage—does not prove the District promised to provide that option forever. In our view, all the District promised retirees under the policy is to provide a medical insurance program in which they could enroll, and to subsidize their costs for enrolling in one of the plans offered. We conclude the retirees have no vested right under the policy to free PPO coverage.

We note that the trial court implicitly found the policy obligated the District to provide at least one fully paid health plan, and the District's provision of free HMO coverage satisfies that obligation. We do not reach that issue, because the sole issue on appeal is whether the policy requires the District to provide free PPO coverage. We have determined the answer is no. Consequently, we conclude the trial court properly entered judgment for the District on the causes of action for declaratory and injunctive relief.

\* \* \*

The retirees also challenge the trial court's order granting summary adjudication of the third, fourth, and fifth causes of action seeking money damages for the denial of their purportedly vested right to free PPO coverage. We conclude the trial court properly found these causes of action barred by the retirees' failure to comply with the provisions of the government claims act. (See Gov. Code, § 945.4.) Contrary to the retirees' assertion, their claims are not exempt from the claim filing requirement by virtue of the exception set forth in section 905, subdivision (f) of the Government Code.

(See *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 763–764 [120 Cal.Rptr.2d 550]; *Dalton v. East Bay Mun. Utility Dist.* (1993) 18 Cal.App.4th 1566, 1574 [23 Cal.Rptr.2d 230].) More to the point, the damage claims are moot, given our holding the retirees have no contractual right to the benefit they assert was denied.

## DISPOSITION

The judgment is affirmed. The District is entitled to its costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied July 19, 2004, and appellant's petition for review by the Supreme Court was denied September 15, 2004.