Filed 11/21/11

# IN THE SUPREME COURT OF CALIFORNIA

RETIRED EMPLOYEES ASSOCIATION )
OF ORANGE COUNTY, INC., )
                                              )
           Plaintiff and Appellant, )
                                              )           S184059
       v. )
                                              )
COUNTY OF ORANGE, )       9th Cir. No. 09-56026
                                              )          C.D. Cal. No.
           Defendant and Respondent. )       CV-07-1301-AG
_____)

At the request of the United States Court of Appeals for the Ninth Circuit,[1] we address the following abstract question: "Whether, as a matter of California law, a California county and its employees can form an implied contract that confers vested rights to health benefits on retired county employees." For the reasons that follow, we conclude that a county may be bound by an implied contract under California law if there is no legislative prohibition against such arrangements, such as a statute or ordinance. (*Youngman v. Nevada Irrigation Dist*. (1969) 70 Cal.2d 240, 246.) Although Government Code section 25300 does require that compensation of county employees be addressed in an ordinance or resolution, the statute does not prohibit a county from forming a contract with implied terms, inasmuch as contractual rights may be implied from an ordinance

---

[1]     *Retired Employees Association of Orange County, Inc. v. County of Orange* (9th Cir. 2010) 610 F.3d 1099; California Rules of Court, rule 8.548.

or resolution when the language or circumstances accompanying its passage clearly evince a legislative intent to create private rights of a contractual nature enforceable against the county.  Whether an implied term creates vested rights, in the absence of a legislative bar, is a matter of the parties' intent.

## I

The backdrop for the question of California law presented by the Ninth Circuit is a lawsuit filed in 2007 by the Retired Employees Association of Orange County, Inc. (REAOC), against the County of Orange (County) contesting the validity of certain changes County has made to health benefits for retired employees.

In 1966, County began offering group medical insurance to retired County employees.  County initially calculated premiums separately for active and retired employees.  In 1985, County began combining active and retired employees into a single unified pool for purposes of calculating health insurance premiums.  Retired employees, as a group, are on average older and more expensive to insure than active employees; if pooled separately, retirees normally would pay higher premiums.  The single unified pool thus had the effect of subsidizing health insurance for retirees, in that it lowered retiree premiums below their actual costs, while raising active employee premiums above their actual costs.  County paid a large portion of the premiums for active employees, but retired employees paid the majority of their own premiums.  County pooled active and retired employees into a single unified pool without interruption from 1985 through 2007.

Due to budgetary concerns, County passed a resolution in 2007 splitting the pool of active and retired employees, effective January 1, 2008.  Before passing the resolution, County negotiated changes to health benefits with labor unions representing the active employees.  County did not negotiate with the retirees.

On November 5, 2007, REAOC filed suit in federal court against County on behalf of approximately 4,600 retired County employees and sought an injunction prohibiting County from splitting the pool of active and retired employees. REAOC conceded that the *express* provisions of the various memoranda of understanding (sometimes hereafter MOU) and the Orange County Board of Supervisors (Board) resolutions were silent as to the duration of the unified pool. But REAOC nonetheless alleged that County's action constituted an impairment of contract in violation of the federal and state Constitutions, in that County's long-standing and consistent practice of pooling active and retired employees, along with County's representations to employees regarding a unified pool, created an *implied* contractual right to a continuation of the single unified pool for employees who retired before January 1, 2008. REAOC noted, for example, that a booklet entitled "Health Plan Choices," which was distributed to active employees, stated that "[w]hen you retire from the County you will be eligible to continue with the health insurance plans" and that "[r]etiree rates are based on the full monthly premiums for each plan, with adjustments for [M]edicare enrollment." County, on the other hand, relied on the annual motions and resolutions of the Board setting health premiums during the relevant period, each of which specified health insurance rates only for that plan year.

The district court granted summary judgment for County on all claims. (*Retired Employees Ass'n v. County of Orange* (C.D.Cal. 2009) 632 F.Supp.2d 983.) As to the claims of breach of contract and impairment of contract, the court held that County cannot, as a matter of state law, be liable for any obligation it did not undertake explicitly through a resolution by the Board.

REAOC appealed to the Ninth Circuit. The federal appellate court recognized that REAOC's impairment-of-contract claim required a showing "that the County entered into an enforceable contract" to continue a single unified pool

for the lifetimes of the retirees and noted further that " 'federal courts look to state law to determine the existence of a contract.' " (*Retired Employees Association of Orange County, Inc. v. County of Orange*, *supra*, 610 F.3d at p. 1102.)  The Ninth Circuit thus asked us for a decision whether, as County contends, "an implied contract to which a county is one party cannot confer . . . vested rights" to health benefits in California.  (*Id*. at p. 1101.)

## II

A contract is either express or implied.  (Civ. Code, § 1619.)  The terms of an express contract are stated in words.  (Civ. Code, § 1620.)  The existence and terms of an implied contract are manifested by conduct.  (Civ. Code, § 1621.)  The distinction reflects no difference in legal effect but merely in the mode of manifesting assent.  (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 102, p. 144.)  Accordingly, a contract implied in fact "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." (*Silva v. Providence Hospital of Oakland* (1939) 14 Cal.2d 762, 773.)

Even when a written contract exists, " ' "[e]vidence derived from experience and practice can now trigger the incorporation of additional, implied terms." ' " (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 463.) "Implied contractual terms 'ordinarily stand on equal footing with express terms' " (*ibid*.), provided that, "as a general matter, implied terms should never be read to vary express terms." (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374.)

All contracts, whether public or private, are to be interpreted by the same rules unless otherwise provided by the Civil Code.  (Civ. Code, § 1635; see also *M. F. Kemper Const. Co. v. City of L.A.* (1951) 37 Cal.2d 696, 704 ["California cases uniformly refuse to apply special rules of law simply because a

4

governmental body is a party to a contract"].)  In the private sector, it is well understood that collective bargaining agreements are intended to govern " 'a myriad of cases which the draftsmen cannot wholly anticipate' " (*Consol. Rail Corp. v. Railway Labor Executives* (1989) 491 U.S. 299, 311-312); that resort may be had, in appropriate circumstances, to the parties' practice, usage, and custom in interpreting the agreement (*ibid.*); and that such agreements "often contain implied, as well as express, terms" (*id*. at p. 309, fn. 7).  Our precedents similarly find, in the public employment context, that "[g]overnmental subdivisions may be bound by an implied contract if there is no statutory prohibition against such arrangements." (*Youngman v. Nevada Irrigation Dist.*, *supra*, 70 Cal.2d at p. 246 (*Youngman*).)

The certified question from the Ninth Circuit asks us to decide whether California law prohibits a county and its employees from agreeing, by means of an implied contract, to confer vested rights to health benefits on retired county employees.  County contends that California law does contain such a prohibition, and presents in this proceeding a three-pronged argument:  (1) that a county government and its employees cannot form an implied contract; (2) that even if implied contracts are cognizable in the public employment context, such contracts cannot create vested rights; and (3) that even if vested contractual rights for county employees may be implied, such rights cannot include health benefits.  We examine each argument in turn.

### A

In *Youngman*, the plaintiff employees of the Nevada Irrigation District claimed they were entitled to merit salary increases under the terms of a salary schedule that it was the district's " 'announced practice' " to use.  (*Youngman*, *supra*, 70 Cal.2d at p. 245.)  The plaintiffs claimed, inter alia, that there was an implied contract between plaintiffs and the district requiring the district to review

5

and advance employees one step in their respective classifications on or about their employment anniversary date each year. (*Id*. at pp. 245-246.) The district, on the other hand, urged that the demurrer to this cause of action be sustained on the ground the district had only such powers as were expressly granted by statute (or necessarily included therein), and no specific authority permitted the district to enter into an implied contract. (*Id*. at p. 246.) We held, unanimously, that the general provisions giving the district the power to hire employees and fix their salaries (Wat. Code, § 21185), to enter into such contracts as necessary to carry out its purpose (*id*., § 22230), and "to perform all acts necessary to carry out fully" its assigned function (*id*., § 22225) included the ability to enter into implied contracts as well as express contracts, "since the only significant difference between the two is the evidentiary method by which proof of their existence and terms is established." (*Youngman*, *supra*, 70 Cal.2d at p. 246.) We then concluded: "Governmental subdivisions may be bound by an implied contract if there is no statutory prohibition against such arrangements." (*Ibid*.)

County contends that *Youngman* does not apply here. It relies on a separate line of authority, exemplified by *Markman v. County of Los Angeles* (1973) 35 Cal.App.3d 132 (*Markman*). In that case, Markman, a deputy sheriff, brought an action to recover compensation for overtime he was ordered to work by his superiors over a period of several years. A Los Angeles County ordinance granted equivalent time off to employees who were compelled to work overtime, but required that most of this compensatory time off be taken in the same calendar year in which it was earned.[2] Alternatively, the ordinance authorized monetary

---

[2]    The ordinance did permit a maximum of 144 hours to be carried over, but only with the approval of the employee's superiors (and even then the time off had to be used within that next calendar year). (*Markman*, *supra*, 35 Cal.App.3d at p.

*(footnote continued on next page)*

6

payment for overtime, but only with the advance approval of the county's chief administrative officer. Markman had not obtained prior approval from the chief administrative officer, nor had he been able to take equivalent time off for nearly 1,200 hours of overtime. (*Markman*, *supra*, at pp. 133-134.) The Court of Appeal recognized that without compensation for the overtime already worked, Markman "will be penalized for something beyond his control," in that "during the working years at issue he would have taken time off equivalent to the overtime hours had he been permitted to do so by his superiors," yet the court still denied any recovery as barred by the local ordinance. (*Id*. at p. 134.) It was in that context that *Markman* offered the analysis on which County now relies: "The terms and conditions relating to employment by a public agency are strictly controlled by statute or ordinance, rather than by ordinary contractual standards; and one who accepts such employment, thereby benefiting in ways denied an employee of a private employer, must in turn relinquish certain rights which are enjoyed by private employees [citation], one such disability being that *the public employee is entitled only to such compensation as is expressly provided by statute or ordinance regardless of the extent of services actually rendered*." (*Id*. at pp. 134-135, italics added.)

County argues that the italicized language directly answers the certified question. In its view, public employee compensation is strictly limited to that which is expressly provided in a statute or ordinance. County deduces, therefore, that a county and its employees can *never* form an implied contract for any kind of

---

*(footnote continued from previous page)*

133.) According to the ordinance, overtime that was not converted into compensatory time off under this formula was " 'lost.' " (*Id*. at p. 134.)

7

compensation, including postretirement health benefits.  County is mistaken; *Markman* did not announce such a broad holding.  It held simply that a public employee who had failed to take equivalent time off within the period specified in the ordinance or to obtain authorization for overtime pay in the manner specified in the ordinance was not entitled to recover "under the provisions of the subject ordinance . . . regardless of the obvious hardship of such a result."  (*Markman*, *supra*, 35 Cal.App.3d at p. 134.)

Subsequent cases that have reiterated the italicized language (or its equivalent) have similarly focused on the conflict between the public employee's particular claim and the governing statute or ordinance.  In *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2007) 154 Cal.App.4th 1536, for example, there was a conflict between the county code and the written policies of the sheriff's department and the district attorney's office as to the type of vacation hours for which employees could obtain a cash payout.  The Court of Appeal quoted the language from *Markman* and then concluded "that to the degree the department policies did not accurately reflect [the county ordinance], they were invalid and the employees were entitled only to that compensation set forth in the ordinance."  (*Association for Los Angeles Deputy Sheriffs*, *supra*, 154 Cal.App.4th at p. 1549; see also *Seymour v. Christiansen* (1991) 235 Cal.App.3d 1168, 1177 [classified employee was not entitled to payment for unused vacation over a period of 21 years; Ed. Code, §45197, subd. (d) permitted the employee to carry over unused vacation "for just one year"]; *California School Employees Assn. v. New Haven Unified School Dist.* (1979) 91 Cal.App.3d 919, 923-924 [classified employees were not entitled as of right to holiday pay where the governing statute gave the district board the authority to elect between monetary compensation and compensating time off].)  These cases are simply instances of the broader principle that "the law does not recognize implied contract terms that

8

are at variance with the terms of the contract as expressly agreed or as prescribed by statute." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 412, emphasis omitted; see also *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 23-24 [" 'insofar as the duration of [public] employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law,' " quoting *Miller v. State of California* (1977) 18 Cal.3d 808, 813]; *Martin v. Henderson* (1953) 40 Cal.2d 583, 590-591 [" 'The statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith' "].)  Inasmuch as County does not claim that any statute bars the granting of health benefits to retirees, these cases are inapposite.

More broadly, we wish to caution that our "often quoted language that public employment is not held by contract" has limited force where, as here, the parties are legally authorized to enter (and have in fact entered) into bilateral contracts to govern the employment relationship.  (*Olson v. Cory* (1980) 27 Cal.3d 532, 537; see also *White v. Davis* (2003) 30 Cal.4th 528, 565-566; cf. *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1434 [distinguishing *Youngman* on the ground "the district was expressly granted powers to contract with employees"].)  Under the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510), local governments are authorized to meet and confer with their employees' authorized bargaining representative regarding wages, hours, and other terms and conditions of employment, and to enter into and approve written memoranda of understanding to memorialize their agreements.  (Gov. Code, §§ 3505, 3505.1.)  As *San Joaquin County Employees' Assn., Inc. v. County of San Joaquin* (1974) 39 Cal.App.3d 83, 88, observed, "the entire import of the Meyers-Milias-Brown Act is to permit as much flexibility in employee-governmental agency relations

9

with regard to all aspects in the employer-employee milieu as a voluntary system will permit."

Here, County negotiated and approved MOU's with its employee bargaining units during the relevant period. "When agreements of employment between the state and public employees have been adopted by governing bodies, such agreements are binding and constitutionally protected." (*Olson v. Cory*, *supra*, 27 Cal.3d at p. 538; see also *Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 55 ["When a public employer chooses instead to enter into a written contract with its employee (assuming the contract is not contrary to public policy), it cannot later deny the employee the means to enforce that agreement"]; cf. *Professional Engineers in California Government v. Schwarzenegger* (2010) 50 Cal.4th 989, 1041 [a state employer's unilateral authority to impose a furlough on represented employees "is governed by the terms of the applicable MOU, rather than by any general statutory provision that applies in the absence of an MOU"].)  Thus, where the employment relationship is governed by contract, a public employee's "breach of contract claim is not simply defeated by his status as a public employee." (*Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289, 313.)  Indeed, "all modern California decisions treat labor-management agreements whether in public employment or private as enforceable contracts (see Lab. Code, § 1126) which should be interpreted to execute the mutual intent and purpose of the parties." (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 339, fns. omitted.)  This principle has special force in the context of public employment, inasmuch as "the bargaining power of public employees has been severely limited by statute." (*Chula Vista Police Officers' Assn. v. Cole* (1980) 107 Cal.App.3d 242, 248.)

10

The contractual right alleged in this case, then, does not necessarily depend on whether there is express language in a statute or ordinance granting REAOC members the right to a single unified insurance pool during their lifetimes. The parties here entered into valid bilateral contracts governing compensation. Whether those contracts (or any other circumstances) established an implied right to a single unified pool of active and retired employees for purposes of setting health insurance premiums cannot be answered by resort to the language of *Markman*, which describes the procedures for analyzing a claim concerning public employee compensation in the *absence* of a contract between the parties. Where the relationship *is* governed by contract, a county may be bound by an implied contract (or by implied terms of a written contract), as long as there is no statutory prohibition against such an agreement. (*Youngman*, *supra*, 70 Cal.2d at p. 246.)

We thus return to the initial question: Does such a prohibition exist? County identifies a number of potential candidates, beginning with article XI, section 1, subdivision (b) of the California Constitution. That provision states in pertinent part: "The Legislature shall provide for county powers, an elected county sheriff, an elected district attorney, an elected assessor, and an elected governing body in each county. Except as provided in subdivision (b) of Section 4 of this article, each governing body shall prescribe by ordinance the compensation of its members . . . . The governing body shall provide for the number, compensation, tenure, and appointment of employees." Although this provision does state that the county's governing body shall prescribe "by ordinance" the compensation of its members, it does not specify any particular formality to be used in setting the compensation of its *employees*. (Cal. Const., art. XI, § 1, subd. (b).) It states merely that the "governing body shall provide for" employee compensation. There is no requirement that it do so by ordinance or any other particular method. (Cf. *Dimon v. County of Los Angeles* (2008) 166 Cal.App.4th

11

1276, 1286 [finding no constitutional impediment to a county's approval of an MOU by resolution].)  Moreover, the purpose of this provision was " 'to give greater local autonomy to the setting of salaries for county officers and employees, *removing that function from the centralized control of the Legislature*,' " not to constrain the method by which local governments were to set employee salaries. (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 286.)

Government Code section 25300, on the other hand, does constrain a county's discretion.  It reads:  "The board of supervisors shall prescribe the compensation of all county officers and shall provide for the number, compensation, tenure, appointment and conditions of employment of county employees.  Except as otherwise required by Section 1 or 4 of Article XI of the California Constitution, such action may be taken by resolution of the board of supervisors as well as by ordinance."  The first sentence of this statute closely tracks the final sentence of article XI, section 1, subdivision (b) of the state Constitution, and thus does not require any particular formality for the fixing of employee compensation.  The second sentence, though, states that except as otherwise provided by particular provisions of the state Constitution—an exception that neither party claims applies here—the fixing of employee compensation "may" be taken by resolution or by ordinance.  Although we ordinarily construe the word "may" as permissive, especially " '[w]hen the Legislature has, as here, used both "shall" and "may" in close proximity in a particular context,' " we have also said that "in determining whether the Legislature intended a statute to be mandatory or permissive, use in the statute of 'may' or 'shall' is merely indicative, not dispositive or conclusive." (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542.)  As part of the determination whether a statute is mandatory or permissive, "we may properly

consider other indicia of legislative intent, including relevant legislative history." (*Ibid.*)

The legislative history of Government Code section 25300 plainly shows that the purpose of the provision's second sentence was to provide a county board of supervisors with an alternative to acting by ordinance. At the time, some county counsel had believed that the terms or conditions of employment "must be" addressed by ordinance. (Sen. Local Gov. Com., Analysis of Assem. Bill No. 4144 (1973-1974 Reg. Sess.) as amended June 18, 1974, p. 1.) Section 25300 was enacted to expand counties' authority to regulate the terms and conditions of employment, including salaries, not just by ordinance but also by resolution. (*Dimon v. County of Los Angeles*, *supra,* 166 Cal.App.4th at p. 1284 ["the statute was amended in 1974 to enable a board of supervisors to address employee compensation by ordinance *or* resolution instead of by ordinance only"].) County, in particular, has mandated that these matters be addressed by resolution: "The regulation of the method of employment, terms of employment, conditions of employment, working hours, leaves of absence, compensation of officers and employees of the County of Orange, the Orange County Flood Control District and the Orange County Harbors, Beaches and Parks District shall, effective July 1, 1965, be fixed by resolution of this Board." (Orange County Code, tit. 1, div. 3, art. 1, § 1-3-2.)

REAOC contends that its members' entitlement to a single unified pool for purposes of setting health premiums represents deferred compensation. (See *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 780; accord, *Chemical Workers v. Pittsburgh Glass* (1971) 404 U.S. 157, 180 ["the future retirement benefits of active workers are part and parcel of their overall compensation"].) County is therefore correct that a court must look to Board resolutions, including those resolutions approving or ratifying MOU's (see Gov. Code, § 3505.1), to

13

determine the parties' contractual rights and obligations. (*Van Riessen v. City of Santa Monica* (1976) 63 Cal.App.3d 193, 196 [where the municipal code stated that payment for unused sick leave " 'may be further regulated by resolution or Memorandum(s) of Understanding,' " plaintiff's failure to identify a resolution or memorandum authorizing payment required denial of the claim].) We need not decide whether County, in light of Government Code section 25300 and the County ordinance cited above, may form an implied contract with its employees on matters of compensation though, as REAOC assured us at oral argument that it was seeking recognition only of an implied *term* of an existing contract (and not the recognition of an implied *contract*). That matters of compensation must be addressed by resolution does not necessarily bar recognition of implied terms concerning compensation. Under California law, contractual rights may be implied from legislative enactments under limited circumstances, as described further below.

A resolution by a county board does not only—or even primarily— establish contract rights. A resolution is also one of the means by which a board of supervisors exercises its authority to effect policy. (*Marquez v. Medical Bd. of California* (2010) 182 Cal.App.4th 548, 557-558; *Pinewood Investors v. City of Oxnard* (1982) 133 Cal.App.3d 1030, 1039.) The judicial determination whether a particular resolution was intended to create private contractual or vested rights or merely to declare a policy to be pursued until the legislative body shall ordain otherwise requires sensitivity to "the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the [governmental body]. [Citation.] Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." (*National R. Passenger*

14

*Corp. v. A. T. & S. F. R. Co.* (1985) 470 U.S. 451, 466; accord, *Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1107.) "Thus, it is presumed that a statutory scheme is not intended to create private contractual or vested rights and a person who asserts the creation of a contract with the state has the burden of overcoming that presumption." (*Walsh v. Board of Administration* (1992) 4 Cal.App.4th 682, 697.)

California courts have regularly applied this presumption, albeit using verbal formulations that have varied in minor ways.

In *Taylor v. Board of Education* (1939) 31 Cal.App.2d 734, the plaintiff teacher challenged the applicability to him of a new state law terminating permanent tenure for teachers reaching the age of 65. In holding that permanent tenure was a creature of statute and not of contract (and thus could be modified), the Court of Appeal observed that " '[o]rdinarily it is the function of a Legislature to make laws and not contracts. It is true, however, that legislative enactments may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the state. It is also equally well established that the intention of the Legislature thus to create contractual obligations, resulting in extinguishment to a certain extent of governmental powers, must clearly and unmistakably appear. . . .' " (*Id.* at p. 746, quoting *Campbell v. Aldrich* (Or. 1938) 79 P.2d 257, 259.)

*California Teachers Assn. v. Cory* (1984) 155 Cal.App.3d 494, which enforced an implied contract concerning the administration of a retirement fund, clarified that, despite the presumption, "a clear manifestation of intent to contract does not require explicit statutory acknowledgement." (*Id.* at p. 509.) "In California law, a legislative intent to grant contractual rights can be implied from a statute if it contains an unambiguous element of exchange of consideration by a private party for consideration offered by the state." (*Id.* at p. 505.) Indeed,

15

numerous cases "have *implied* contractual obligations from the particular texts and contexts of the statutes at issue." (*Ibid.*)

*Claypool v. Wilson* (1992) 4 Cal.App.4th 646 declined to recognize an implied promise concerning the allocation of investment earnings in a retirement fund. *Claypool* nonetheless acknowledged that contractual obligations could be implied from a statute, but cautioned "that the implication of suspension of legislative control must be 'unmistakable.' " (*Id.* at p. 670, quoting *California Teachers Assn. v. Cory*, *supra*, 155 Cal.App.3d at p. 509; see also *Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1135 [upholding a finding of an implied vested right to an actuarially sound public retirement system].)

From these cases, we conclude generally that legislation in California may be said to create contractual rights when the statutory language or circumstances accompanying its passage "clearly '. . . evince a legislative intent to create private rights of a contractual nature enforceable against the [governmental body].' " (*Valdes v. Cory* (1983) 139 Cal.App.3d 773, 786, quoting *United States Trust Co. v. New Jersey* (1977) 431 U.S. 1, 17, fn. 14.) Although the intent to make a contract must be clear, our case law does not inexorably require that the intent be express. (Cf. Mo. Rev. Stat. § 432.070 ["No county . . . shall make any contract, unless . . . such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto"].) A contractual right can be implied from legislation in appropriate circumstances. (E.g., *California Teachers Assn. v. Cory*, *supra*, 155 Cal.App.3d at p. 505.) Where, for example, the legislation is itself the ratification or approval of a contract, the intent to make a contract is clearly shown.

Amici curiae League of California Cities and California State Association of Counties contend the doctrine of implied contractual rights has no application where, as here, the mode of contracting is established by law. Amici curiae rely

16

on *Reams v. Cooley* (1915) 171 Cal. 150, which said, "Where the statute prescribes the only mode by which the power to contract shall be exercised the *mode* is the *measure* of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract and the doctrine of implied liability has no application in such cases." (*Id*. at p. 154; see also *Miller v. McKinnon* (1942) 20 Cal.2d 83, 91-92 [quoting *Reams*].) The "doctrine of implied liability" at issue in *Reams*, though, was "an implied contract in an action on *quantum meruit*." (*Reams*, *supra*, at p. 153.) *Reams* thus held simply that "no implied liability to pay upon a *quantum meruit* could exist where the prohibition of the statute against contracting in any other manner than as prescribed is disregarded." (*Id*. at pp. 156-157.) In this proceeding, we are presented with a claim of an implied-in-fact contract, not an implied-in-law or quasi-contract. (Cf. *Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 109-110.) Moreover, REAOC, unlike the plaintiff in *Reams*, does not seek to recover "under a contract made in violation of the particularly prescribed statutory mode" (*Reams*, *supra*, at p. 154 [a contract not awarded through a competitive bid process]; see also *Miller v. McKinnon*, *supra*, 20 Cal.2d at pp. 87-88 [same]), but claims instead it has contractual rights that are implied in resolutions duly approved by County. *Reams* is therefore inapposite.

County relies also on Government Code section 3505.1, which authorizes the representatives of a public agency and the representatives of a recognized employee organization, when they have reached an agreement, to prepare a written memorandum of understanding, which shall not be binding, and to present it to the governing body "for determination." County focuses on the proviso that the written memorandum of understanding is not "binding" until it is presented to the governing body "for determination." But REAOC does not contend a contract for certain health benefits exists even though the contract was never presented to the

17

Board; rather, REAOC claims that that the contract was presented to the Board—and approved by a majority of Board members (Gov. Code, § 25005)—but that it included terms that are not express. (See *Glendale City Employees' Assn., Inc. v. City of Glendale*, *supra*, 15 Cal.3d at pp. 339-340.) Government Code section 3505.1 does not categorically bar such a claim. (See generally Gov. Code, § 25207 ["The board may do and perform all other acts and things required by law not enumerated in this part, or which are necessary to the full discharge of the duties of the legislative authority of the county government"].)

The same analysis disposes of Government Code section 54953, which requires that a legislative body's meetings be open and public, and section 54960.1, which describes the procedures required to nullify any action taken in violation of the Ralph M. Brown Act open meeting law. REAOC does not seek to enforce a contract that was approved in violation of the Ralph M. Brown Act. It seeks instead to enforce the implied terms of a contract that was assertedly approved in an open meeting.

Amici curiae League of California Cities and California State Association of Counties raise legitimate concerns that retiree health insurance benefits, unlike pensions, are not funded during the retiree's working years; that most of these benefits have been funded on a pay-as-you-go basis; and that the cost of providing health insurance benefits has skyrocketed in recent years. Amici curiae further contend that the changes effected by County in 2007 were a measured and thoughtful response to an ever-increasing unfunded liability. The certified question, however, is one of law, not of policy. Whether a contractual right for the continuation of a single unified pool for purposes of setting health insurance premiums for retired Orange County employees can be implied from Board resolutions, including those resolutions approving the memoranda of understanding, is beyond the scope of the certified question, and we do not purport

18

to decide it here. A court charged with deciding whether private contractual rights should be implied from legislation, however, should "proceed cautiously both in identifying a contract within the language of a . . . statute and in defining the contours of any contractual obligation." (*National R. Passenger Corp. v. A. T. & S. F. R. Co.*, *supra*, 470 U.S. at p. 466.) The requirement of a "clear showing" that legislation was intended to create the asserted contractual obligation (*Parker v. Wakelin* (1st Cir. 1997) 123 F.3d 1, 5) should ensure that neither the governing body nor the public will be blindsided by unexpected obligations.

**B**

County argues next that even if contractual rights can be implied from legislation under certain circumstances, it is nonetheless impermissible to infer *vested* contractual rights.[3] Neither County nor amici curiae, though, offer any legal authority for this distinction. (Cf. *National R. Passenger Corp. v. A. T. & S. F. R. Co.*, *supra*, 470 U.S. at p. 466 [describing the circumstances in which a statute may be interpreted to create contractual *or* vested rights].) In the cases they have cited, the courts found that the particular benefits at issue were not vested, not that vesting was categorically barred. Vesting remains a matter of the parties' intent.

---

[3] A benefit is deemed "vested" when the employee acquires an irrevocable interest in the benefit. The "vesting" of retirement benefits must be distinguished from the "maturing" of those benefits, which occurs after the conditions precedent to the payment of the benefits have taken place or the benefits are otherwise within the control of the employee. (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596, fn. 2, overruled on other grounds, *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14.) In this proceeding, REAOC contends that a retiree's right to the benefits of a single unified pool vested at the time of retirement, and explicitly disavows any claim that the benefits vested when the employee began his or her service.

In *San Bernardino Public Employees Assn. v. City of Fontana* (1998) 67 Cal.App.4th 1215 (*San Bernardino Public Employees*), the plaintiff labor organization challenged the City of Fontana's proposal during negotiations on a new MOU to reduce longevity pay and accrual of personal leave, claiming that these were vested contractual rights.  The Court of Appeal held that these benefits "could not have become permanently and irrevocably vested as a matter of contract law, because the benefits were earned on a year-to-year basis under previous MOU's that expired under their own terms."  (*Id*. at p. 1224.)  The plaintiff did not argue—and the Court of Appeal did not consider—whether such rights could be created by implication.  Indeed, the court noted that "no outside statutory source gives the employees additional protection or entitlement to future benefits" in that particular case (*id*. at p. 1225), while acknowledging that a vested right could be " 'conferred by statute or other valid regulation' " (*id*. at p. 1223, quoting *Butterworth v. Boyd* (1938) 12 Cal.2d 140, 150) " 'when the statutory language and circumstances accompanying its passage clearly ". . . evince a legislative intent to create private rights of a contractual nature enforceable against the State" ' " (*San Bernardino Public Employees*, *supra*, 67 Cal.App.4th at p. 1223).

County's position is further undermined by *California League of City Employee Associations v. Palos Verdes Library Dist.* (1978) 87 Cal.App.3d 135, which implied vested rights to certain pay, vacation, and sabbatical benefits that were based on longevity.  The Court of Appeal upheld the trial court's finding that these benefits "had been an inducement to remain employed with the district, and were a form of compensation which had been earned by remaining in employment."  (*Id*. at p. 140.)  Although we agree with the criticism by some state and federal courts that the *California League* analysis was deficient in failing to focus explicitly on "the legislative body's intent to create vested rights" or the

20

plaintiff's "heavy burden" to demonstrate that intent (see *San Diego Police v. San Diego Retirement System* (9th Cir. 2009) 568 F.3d 725, 740; accord, *San Bernardino Public Employees*, *supra*, 67 Cal.App.4th at pp. 1222-1223), none of this criticism purports to quarrel with the underlying theory in *California League* that public employee benefits, in appropriate circumstances, could become vested by implication. (See *San Diego Police*, *supra*, at p. 740; *San Bernardino Public Employees*, *supra*, at p. 1223; see also *Lawrence v. Town of Irondequoit* (W.D.N.Y. 2002) 246 F.Supp.2d 150, 166-169 [whether the personnel policies and procedures manual, adopted by resolution, created a vested right to health benefits could not be determined on summary judgment].)

In *Sappington v. Orange Unified School Dist.* (2004) 119 Cal.App.4th 949, the retiree plaintiffs claimed a vested right to free health insurance through a preferred provider organization (PPO) health benefits plan. The school district had offered a free PPO plan for a period of years but, in 1998, instituted a " 'buy-up-charge' " for the PPO plan, while continuing to offer a health maintenance organization plan at no cost. (*Id*. at pp. 951-952.) The Court of Appeal determined that the policy adopted by the board of education, which had stated only that the district " 'shall underwrite the cost of the District's Medical and Hospital Insurance Program' for eligible retirees" (*id*. at p. 954), did not grant the retirees a vested right to free PPO coverage. In reaching its conclusion, the court relied on dictionary definitions and common understandings of the word "underwrite," extrinsic evidence of the parties' course of conduct, and the absence of any evidence that the retirees had a reasonable expectation of free lifetime PPO coverage. (*Id*. at pp. 954-955.) The *Sappington* court thus did *not* hold that vested benefits could never be implied in the public employee context. Indeed, its analytical approach belies any such interpretation.

21

REAOC asserts that the single unified pool, which reduces the cost of health insurance premiums as compared to those based on a pool of retirees alone, is a form of deferred compensation and thus vested when its members retired. (See *Suastez v. Plastic Dress-Up Co.*, *supra*, 31 Cal.3d at p. 780; accord, *Navlet v. The Port of Seattle* (Wn. 2008) 194 P.3d 221, 224, 231 [implying a vested right to lifetime health and welfare benefits for employees who reached retirement age during the term of the collective bargaining agreement].) Whether that claim is valid and whether, in particular, REAOC's members had a contractual right to be part of a single unified pool with active employees for purposes of establishing health insurance premiums that vested when they retired, is beyond the scope of the certified question. However, as with any contractual obligation that would bind one party for a period extending far beyond the term of the contract of employment, implied rights to vested benefits should not be inferred without a clear basis in the contract or convincing extrinsic evidence.

## C

Finally, County argues that even if vested contractual rights may be implied from legislation, no such rights may be implied with respect to *health benefits*. County relies on the California Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq.; CERL) and focuses specifically on Government Code section 31692, which provides in relevant part that "[t]he adoption of an ordinance or resolution pursuant to Section 31691 *shall give no vested right* to any member or retired member . . . ." (Italics added.) Section 31692 further provides that "the board of supervisors or the governing body of the district may amend or repeal the ordinance or resolution at any time except that as to any member who is retired at the time of such an amendment or repeal, the amendment or repeal shall not be operative until ninety (90) days after the board or governing body notifies the member in writing of the amendment or repeal."

22

Government Code section 31692 is clear that no vested rights are created by "the adoption of an ordinance or resolution pursuant to Section 31691," which in turn authorizes a county board of supervisors by ordinance (or a specified district by ordinance or resolution) to "provide for the contribution by the county or district from its funds . . . toward the payment of all or a portion of the premiums on a policy or certificate of life insurance or disability insurance . . . or toward the payment of all or part of the consideration for any hospital service or medical service corporation, including any corporation lawfully operating under Section 9201 of the Corporations Code, contract, or for any combination thereof, for the benefit of any member heretofore or hereafter retired or his or her dependents.  At least one of these plans shall include free choice of physician and surgeon." (Gov. Code, § 31691, subd. (a).)  But the precise relationship between a "hospital service or medical service corporation . . . contract," as specified in Government Code section 31691, subdivision (a), and "health benefits," as specified in the certified question from the Ninth Circuit, is less clear.  REAOC points out that a separate law, not mentioned by Government Code section 31692, authorizes the legislative body of a local agency, including a county, to provide "health and welfare benefits" to its employees and retired employees "subject to conditions *as may be established by it*" (Gov. Code, § 53201, subd. (a), italics added) and to pay all or a portion of such premiums for "any one or more of the following:  hospital, medical, surgical, disability, legal expense or related benefits including, but not limited to, medical, dental, life, legal expense, and income protection insurance or benefits, *whether provided on an insurance or a service basis,* and includes group life insurance . . . ." (Gov. Code, § 53200, subd. (d), italics added.)

REAOC contends that the anti-vesting language in Government Code section 31692 therefore does not apply to health *insurance* benefits, since such

23

benefits are authorized by Government Code section 53201 and not by section 31691. (See *California Physicians Service v. Garrison* (1946) 28 Cal.2d 790, 810 [a health service corporation is not engaged in the business of insurance]; see generally *Songstad v. Superior Court* (2001) 93 Cal.App.4th 1202, 1208-1209 ["The use of a term in a statute addressing a subject, and omitting that term and using a different term in a similar statute addressing a related subject, shows a different meaning was intended in the two statutes"].) REAOC points out further that the nature and scope of health and welfare benefits under section 53201 are explicitly entrusted to the discretion of the local legislative body. REAOC adds, moreover, that health insurance benefits provided under section 53201 have been found to be vested benefits, notwithstanding the anti-vesting language of section 31692. (See, e.g., *Thorning v. Hollister School Dist.* (1992) 11 Cal.App.4th 1598, 1602 [upholding claim of retired district board members to vested rights to health insurance benefits provided under § 53201]; 67 Ops.Cal.Atty.Gen. 510 (1984) [school district may not discontinue health and life insurance benefits provided under § 53201 of retired board members or of current board members during their terms].)

County, which does not grapple with the difference in language between Government Code sections 31691, subdivision (a) ("any hospital service or medical service corporation . . . contract") and 53200, subdivision (d) ("hospital, medical, surgical . . . benefits including . . . medical . . . insurance or benefits, whether provided on an insurance or a service basis"), insists nonetheless that the anti-vesting language of Government Code section 31692 "plainly applies" to the benefits here. Moreover, *neither* party discusses what relationship, if any, exists between a "hospital service or medical service corporation . . . contract," as specified in Government Code section 31691, subdivision (a), and a " '[h]ealth

24

care service plan,' " as defined by Health and Safety Code section 1345, subdivision (f).

The interrelationship of these various provisions is not immediately apparent. However, we need not decide the precise scope of benefits contemplated by Government Code section 31691, subdivision (a), because County's reliance on the anti-vesting language in Government Code section 31692 fails for a different reason: the vested benefit REAOC is seeking to preserve in this proceeding is not a "contribution by the county . . . from its funds . . . toward the payment of all or a portion" of the consideration for any hospital or medical service corporation contract. (Gov. Code, § 31691, subd. (a).) REAOC is seeking to preserve a particular methodology by which the health benefit premiums of active and retired employees are calculated. That the pooling of active and retired employees may have the effect of elevating the insurance premiums for active employees over what they would be if the active employees were in a separate pool does not establish that *County* made a contribution from its funds toward the payment of any service corporation contracts. Section 31691, subdivision (a) applies not to the mere provision of certain health benefits (cf. Gov. Code, § 53201, subd. (a) ["The legislative body of a local agency . . . *may provide for* any health and welfare benefits for the benefit of its officers, employees, [and] retired employees . . . ." (italics added)]), but only to the "contribution by the county . . . from its funds . . . toward the payment of all or a portion" of them. A county's selection among permissible methods of calculating health insurance premiums, like its decision to allow retirees to participate in a group insurance plan, has certain effects on the level of premiums, but does not itself qualify as a contribution by the county from its funds toward payment of the premiums that are actually charged.

25

It is true that County, during the relevant period, entered into MOU's with active employees under which County agreed to pay a large portion of the premiums for active employees—and thus effectively subsidized a portion of the retiree premiums. But, as County acknowledges, REAOC has never claimed a vested right to *this* contribution. Indeed, REAOC does not argue that County must continue to make *any* contributions toward the payment of *active* employee premiums. Rather, REAOC argues that health premiums for active and retired employees, however they are paid, must be equal. Accordingly, Government Code section 31692 does not compel an answer of "no" to the certified question.

### III

In response to the Ninth Circuit's inquiry, we conclude that, under California law, a vested right to health benefits for retired county employees can be implied under certain circumstances from a county ordinance or resolution. Whether those circumstances exist in this case is beyond the scope of the question posed to us by the Ninth Circuit.

BAXTER, J.

WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Retired Employees Association of Orange County Inc. v. County of Orange
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX – on request pursuant to rule 8.548 Cal. Rules of Court
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S184059
**Date Filed:** November 21, 2011
_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Rosen Bien & Galvan, Ernest Galvin; Moscone, Emblidge & Sater, G. Scott Emblidge, Rachel J. Sater and Michael P. Brown for Plaintiff and Appellant.

Peter H. Mixon, Gina M. Ratto, Patricia K. McBeath, Howard L. Schwartz and Jennifer G. Krengel for California Public Employees' Retirement System as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of Robert J. Bezemek, Robert J. Bezemek and Patricia Lim for The California Federation of Teachers, The California Community College Independents Organization and The Fresno United Retirees Association as Amici Curiae on behalf of Plaintiff and Appellant.

Lewis, Feinberg, Lee, Renaker & Jackson, Jeffrey Lewis, Bill Lann Lee, Andrew Lah and Sacha Crittenden Steinberger for California Retired County Employees Association, Sonoma County Association of Retired Employees and Retiree Support Group of Contra Costa County as Amici Curiae on behalf of Plaintiff and Appellant.

Nicholas S. Chrisos, County Counsel, Teri L. Maksoudian, Deputy County Counsel; Meyers, Nave, Riback, Silver & Wilson, Arthur A. Hartinger, Jennifer L. Nock and J. Scott Smith for Defendant and Respondent.

Renne Sloan Holtzman Sakai, Jonathan V. Holtzman, K. Scott Dickey and Steve Cikes for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

Hanson Bridgett, Raymond F. Lynch, Sarah D. Mott and Caroline B. Burnett for the County of Sonoma and the County of Contra Costa as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Ernest Galvan
Rosen Bien & Galvan
315 Montgomery Street, 10th Floor
San Franicsco, CA  94104-1823
(415) 433-6830

Arthur A. Hartinger
Meyers, Nave, Riback, Silver & Wilson
555 12th Street, Suite 1500
Oakland, CA  94607
(510) 808)-2000

Jonathan V. Holtzman
Renne Sloan Holtzman Sakai
350 Sansome Street, Suite 300
San Francisco, CA  94104
(415) 678-3800