Filed 7/16/13; pub. order 7/30/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GERALDINE CHISOM et al.,<br><br>   Plaintiffs and Appellants,<br><br>   v.<br><br>BOARD OF RETIREMENT OF COUNTY OF FRESNO EMPLOYEES' RETIREMENT ASSOCIATION et al.,<br><br>   Defendants and Respondents. | F064259<br><br>(Super. Ct. No. 10CECG02372)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Sharon Elizabeth Mettler, Judge. (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Thomas J. Tusan and Russell D. Cook for Plaintiffs and Appellants.

Reed Smith, Harvey L. Leiderman and Jeffrey R. Rieger for Defendants and Respondents Board of Retirement of County of Fresno Employees' Retirement Association and Fresno County Employees' Retirement Association.

Lozano Smith, Gregory A. Wedner and Scott G. Cross for Defendants and Respondents County of Fresno, Clovis Veterans Memorial District, Fresno Mosquito & Vector Control District and Superior Court of California for the County of Fresno.

-ooOoo-

Appellants are retired public employees and members of the Fresno County Employees' Retirement Association (FCERA). From 2001 to 2009, if a member of FCERA qualified for a non-service-connected disability retirement, the amount of his or her monthly retirement allowance was calculated based on an "enhanced" benefits formula that exceeded the formula provided in the statutes governing such matters as found in the County Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq. (CERL)).[1] The rationale for using the enhanced benefits formula was an interoffice letter by the chief deputy county counsel stating that, in his opinion, a 2000 settlement agreement (the settlement agreement), which resolved certain claims against the County of Fresno (the County), FCERA, and others, relating to retirement benefits, was intended to include an enhancement of disability retirement benefits. The letter advised that disability retirement allowances should be increased according to a formula attached to the letter. FCERA followed that advice, even though the settlement agreement had enhanced only "service" retirement benefits and was silent as to disability retirement benefits. In 2009, the governing board of FCERA, known as the board of retirement (the Board), reexamined the issue and concluded that it had been erroneously using the enhanced benefits formula to calculate non-service-connected disability retirement, and it voted to discontinue that practice. Appellants then filed the present action against the Board, FCERA, the County, and other plan sponsors (collectively respondents), to require them to resume the use of the enhanced benefits formula. Respondents demurred. After allowing several opportunities to amend, the trial court sustained respondents' demurrer to appellants' third amended petition without leave to amend on the ground that, as a matter of law, the settlement agreement did not include the enhanced benefits

---

[1] Unless otherwise indicated, further statutory references are to the Government Code.

2.

formula for disability retirement.  Appellants appeal from the resulting judgment, arguing that under the recent Supreme Court case of *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171 (*Retired Employees*), the enhanced benefits formula for disability retirement was arguably an *implied* term of the settlement agreement.  We disagree and will affirm the judgment of the trial court.

## BACKGROUND AND PROCEDURAL HISTORY

### CERL—The Statutory Backdrop

FCERA is a public retirement trust that exists to administer benefits for active and retired public employees in Fresno County.  It operates under the provisions of CERL. (*Stillman v. Board of Retirement of Fresno County Employees' Retirement Assn.* (2011) 198 Cal.App.4th 1355, 1360.)  Upon satisfying age and service requirements, members of a county retirement system governed by CERL (such as FCERA) qualify to receive a service retirement allowance.  A member's service retirement allowance is determined under one of the statutory formulas set forth in CERL (e.g., § 31676.14), upon adoption thereof by a county's board of supervisors.

When a member of FCERA is incapacitated due to a disability, he or she may be entitled to receive a disability retirement allowance from FCERA.  (See § 31720 et seq.) If the disability was not in the course of or caused by the member's employment, the member may be entitled to what is called a "non-service-connected" disability retirement allowance.  (See §§ 31726 [general members], 31726.5 ["safety" members].)  If a member qualifies for a non-service-connected disability retirement, the monthly allowance is calculated under a formula that appears in the applicable section of CERL. (See §§ 31727 [general members], 31727.2 ["safety" members].)  A separate statutory formula is used for service-connected disability.  (§ 31727.4.)  Service connected-disability is not at issue in this case.

**The *Ventura* Decision and Its Aftermath**

As noted, appellants contend that monthly retirement allowances paid by FCERA for non-service-connected disabilities must be calculated under an enhanced benefits formula that is greater than the CERL formula. Appellants argue they acquired such rights as an implied term of the settlement agreement. Before we discuss the settlement agreement itself, it is necessary as background to briefly note the Supreme Court decision of *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483 (*Ventura*), since that decision was the basis for the class action claims that were settled in the settlement agreement.

In *Ventura*, the Supreme Court engaged in extensive statutory analysis of certain sections of CERL to interpret the meaning of "'compensation'" and "'compensation earnable'" in order to ascertain what must be included in an employee's "'final compensation'" for purposes of calculating his or her retirement pension under CERL. (*Ventura*, *supra*, 16 Cal.4th at pp. 487-505.) The Supreme Court held that in addition to an employee's base salary, other forms of cash remuneration (excluding overtime) had to be included in calculating his or her final compensation for purposes of a CERL retirement pension, such as educational pay, bilingual pay, payments in lieu of accrued vacation time, uniform maintenance allowances, etc. (*Ibid.*) In so holding, the Supreme Court disapproved a longstanding Court of Appeal decision upon which Ventura County, among many other counties, had relied in making actuarial calculations. (*Id.* at pp. 505-507.) The Supreme Court concluded its opinion in *Ventura* with the following remedial directives: "There may be unanticipated costs to Ventura County if the pensions of the individual plaintiffs and the employees the association represents must be recalculated and adjusted upward. If so, to comply with the financial provisions of CERL [citation] and accommodate future increases, the county may have to make a supplemental appropriation and adjust the future annual appropriation for its contribution to the pension

4.

fund to cover the increase in future retiree pensions that results from inclusion of additional items of 'compensation' in 'compensation earnable.'" (*Id*. at p. 507.)

In the aftermath of *Ventura*, a number of class action lawsuits were filed in various counties, alleging noncompliance with *Ventura* in the computation of retirement benefits and seeking to make the *Ventura* decision retroactive. Several such class action lawsuits were filed in Fresno County Superior Court against FCERA and/or the County, which cases were consolidated and coordinated to San Francisco County Superior Court. These cases were (and are) collectively referred to as *Ventura II* litigation. The parties to the Fresno County *Ventura II* litigation reached a final settlement pursuant to a settlement agreement that is described below.

**The Settlement Agreement**

The settlement of the Fresno County *Ventura II* litigation entailed two consecutive settlement agreements, the first of which was executed in July-August 2000 (the first agreement), but it was short-lived. The first agreement provided, among other things, that "[a]ll parties agree to an enhanced formula for service retirement benefits for both general and safety members" in accordance with an attachment thereto. It also required the parties "to cooperate in facilitating the passage of enabling amendment of [CERL] necessary to provide the enhanced formula." A notice was sent to all class members to advise them of the terms of the settlement, and San Francisco County Superior Court approved the class action settlement. However, when the proposed enabling legislation was vetoed by the Governor, it rendered the first agreement null and void.

In October 2000, the parties negotiated and executed a second settlement agreement that was later approved by San Francisco Superior Court. This became the operative settlement agreement between the parties and is referred to herein as the settlement agreement. Section 6 of the settlement agreement provided that "[a]ll parties agree that the County Board of Supervisors will (1) adopt by resolution the service retirement formula for general members provided by … section 31676.14, to be effective

5.

January 1, 2001; … [and] (2) adopt a resolution provided by section 31678.2 (effective January 1, 2001) to make the section 31676.14 formula retroactive for all service credit earned by employees retiring on or after January 1, 2001." Section 6 further provided that only class members retiring on or after January 1, 2001, would be entitled to the benefits provided in section 6. Additionally, in section 7 of the settlement agreement, the parties agreed "to cooperate in facilitating passage of an enabling amendment of [CERL] to provide an enhanced formula for service retirement benefits equal to 'two and one half percent at age 55' … for general members and 'two and one half percent at age 50' … for safety members. [¶] … [U]pon the effective date of such amendment, benefits for employees retiring on and after January 1, 2001 shall be provided under that enhanced formula rather than as provided in section 6."[2] Persons who retired before January 1, 2001, would not be entitled to the benefits indicated in sections 6 or 7, but would receive an increase of "$15.00 per month service benefit for each full year of service subject to a maximum of 30 years service, i.e., a maximum of $450." As with the first agreement, the settlement agreement expressly mentioned and enhanced *only* "service" retirement benefits; it was completely silent as to disability retirement.

By its terms, the settlement agreement purported to be a compromise that was meant to fully resolve and settle all of the Fresno County *Ventura II* lawsuits and all issues between the parties therein, and it included mutual waivers and releases, along with a promise to forbear from any future lawsuit or claim relating to the scope of the *Ventura* Supreme Court opinion or to the items of compensation to be included for purposes of CERL. Not only was the settlement agreement intended to settle "all issues among the [p]arties," but it was expressly agreed that it was "complete and final" with respect to those issues.

---

**2** We have not been informed whether such legislation was enacted.

6.

Moreover, section 19 of the settlement agreement stated as follows: "This Settlement Agreement constitutes the entire agreement among the [p]arties. *The [p]arties expressly acknowledge that no other agreements, arrangements, or understandings exist among them that are not expressed in this Settlement Agreement*." (Italics added.) In section 20, the parties acknowledged that the settlement agreement was "clear and unambiguous," was reviewed by all counsel, and it was agreed that no "parol or other evidence outside this agreement" may be used "to explain, construe, contradict, or clarify the terms of the Settlement Agreement, the intent of the [p]arties or their counsel, or the circumstances under which the Settlement Agreement was made or executed." In section 21, the parties further agreed the settlement agreement could only be amended, modified or expanded by written agreement of those parties affected by the particular amendment sought.

After all members of the class action were notified of the terms of the settlement agreement, the trial court approved it and a judgment was entered thereon. Approximately 20 signatures were affixed to the settlement agreement, most of which were the signatures of attorneys who had reviewed the document on behalf of their respective client or clients, and by signing indicated approval and acceptance thereof. Among the attorneys who signed the settlement agreement was J. Wesley Merritt of the Fresno County Counsel's office. He had also signed the first agreement.

**The Opinion Letter**

On October 19, 2001, in response to a request from the Fresno County Auditor-Controller for a legal opinion on the issue of "computing disability retirement benefits following the settlement of the Ventura II class action litigation," Chief Deputy County Counsel J. Wesley Merritt wrote a confidential letter stating as follows:

> "We conclude that post-settlement disability retirement benefits should be computed based on an enhanced formula commensurate with the enhanced benefits extended to service retirees under the settlement agreement.

"In *Ventura*[, *supra*,] 16 Cal.4th 483 …, the California Supreme Court expanded what must be included in an employee's compensation for purposes of computing retirement benefits. Successor Ventura II lawsuits were then filed … seeking to make the Ventura [] decision retroactive and add additional items to an employee's compensation for purposes of computing retirement benefits. [¶] … [¶]

"We first attempted settlement of these [Fresno County *Ventura II*] cases by an agreement executed in July and August 2000. That initial agreement called for enhanced service retirement benefits at 2 1/2% at age 55 for general members and 2 1/2% at age 50 for safety members, to be accomplished by amendment of [CERL]. [¶] At the time of that initial agreement, the retirement system actuaries also drafted proposed amendments to [CERL] for enhanced disability retirement benefits (copy attached). The proposed amendments prescribed a disability retirement benefits formula commensurate with the enhanced retirement benefits extended to service retirees under the settlement agreement. However, contrary to enhanced <u>service</u> retirement benefits, the proposed statutory amendments for enhanced <u>disability</u> retirement benefits were never finalized for submission to the Governor.

"The Governor vetoed the enabling service retirement legislation proposed under the initial settlement agreement. The parties then negotiated and executed a second settlement agreement. Under that second agreement, the same enhanced service retirement benefits were provided .… However, the second agreement is silent on disability retirement benefits.

"It was obviously the intent of the parties to the second settlement agreement to include enhanced disability retirement benefits equal to those proposed under the initial agreement. We therefore advise that you compute post-settlement disability retirement benefits under the attached enhanced formula drafted by the actuaries for the initial agreement, i.e., disability retirement benefits commensurate with the enhanced benefits for service retirees. We also advise that you pursue enactment of the disability formula into [CERL] just as we are pursuing statutory enactment of the service retirement benefit tables."

Mr. Merritt's letter indicated he was under the impression that the first agreement included an enhancement of disability benefits. We note that, in reality, neither the first agreement nor the settlement agreement did so—at least not expressly. The attachment to Mr. Merritt's letter appears to be a photocopy of section 31727.1 of CERL with some

handwritten notations on it. Where the photocopy of the existing statute set forth the formula as "[n]inety percent of one-fiftieth of his final compensation multiplied by the number of years of service credited to him," the word "one-fiftieth" was crossed out where it appeared in the statute and was replaced by a handwritten insertion of the word "one-fortieth." This was the enhanced benefits formula that Mr. Merritt advised should be used in computing non-service-connected disability retirement. In reliance on the advice of county counsel, FCERA paid non-service-connected disability benefits in accordance with this enhanced benefits formula from approximately 2001 to 2009.

**Events in 2008-2009**

In late 2008, new counsel for the Board reviewed the matter and advised the Board that it could no longer use the enhanced formula for paying non-service-connected disability retirement. After a series of public meetings were held concerning the issue, the Board elected to discontinue use of the enhanced benefits formula for non-service-connected disability, effective as of June 30, 2009. As of that date, the Board would pay a retirement allowance for non-service-connected disability in accordance with the provisions of CERL. The Board also decided it would waive any recovery of past overpayments.

**Proceedings in the Trial Court**

Appellants then filed the present lawsuit, seeking to compel respondents to resume the use of the enhanced formula for calculating non-service-connected disability retirement benefits. After a series of demurrers and opportunities to amend, appellants filed their third amended petition on July 1, 2011. The attachments to the third amended petition included the first agreement, the court order approving it, the settlement agreement, the court order approving it, and Mr. Merritt's opinion letter.

The third amended petition set forth five causes of action: A first and second cause of action for writ of mandate, a third cause of action for reformation of contract, a fourth cause of action for breach of contract, and a fifth cause of action for rights under

9.

the *Ventura* case. The first through fourth causes of action claimed that appellants were entitled to the enhanced benefits formula for disability retirement based on *the settlement agreement*. In essence, the first through fourth causes of action were premised on appellants' assertion that the right to receive the enhanced disability benefits was an implied term of the settlement agreement. The fifth cause of action claimed, in the alternative, that if the settlement agreement did not create such rights, then appellants were entitled to such rights under the principles of the *Ventura* case.

Respondents demurred to the third amended petition on the ground that it failed to state a cause of action because the settlement agreement did not include disability retirement benefits and because the clear terms of the settlement agreement foreclosed all of appellant's claims. The trial court agreed and sustained the demurrer without leave to amend.

The trial court's order explained: "The manifest intent of the parties to the contract was to have an agreement that would not be subject to attack. They included every waiver and finding known to the law at the time to avoid future litigating of any <u>Ventura</u> issues. It was clearly the intent to have this agreement be the end. Permitting Count four to proceed would be ignoring this intent and depriving defendants of the benefit of the bargain. [¶] Through two court hearings and agreements the non-service connected disability (NSCD) retirees were not included in the agreement. Fresno County Chief Deputy County Counsel J. Wesley Merritt signed this contract that contains waivers and asserts there are no ambiguities. The terms of his later letter to the Fresno County Auditor Controller make clear that he realized that the agreement he signed did not cover the NSCD retirees and that a change in the law was necessary for them to be covered.… [¶] There is nothing in the legal record that warrants a finding of ambiguity in the terms of the contract and the contract clearly waives future modifications for omitted terms."

After the demurrer was sustained without leave to amend, the third amended petition was dismissed with prejudice and judgment entered for respondents. Appellants appealed from the judgment.

## DISCUSSION

### I.      Standard of Review

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

If the allegations in the complaint conflict with attached exhibits, we rely on and accept as true the contents and legal effect of the exhibits. (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83; *Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.) However, "if the exhibits are ambiguous and can be construed in the manner suggested by plaintiff, then we must accept the construction offered by plaintiff." (*SC Manufactured Homes, Inc. v. Liebert*, *supra*, at p. 83.) "'So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement.' [Citation.]" (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239.)

11.

## II.     The Demurrer Was Correctly Sustained

Appellants do not deny that the settlement agreement was silent about disability benefits.  They do not claim to state a cause of action for breach of an *express* term of a contract.  Rather, appellants argue the trial court erred in sustaining the demurrer without leave to amend because, under the principles set forth in the recent Supreme Court case of *Retired Employees*, *supra*, 52 Cal.4th 1171, they stated a cause of action for an *implied* contract term to provide disability retirement under the enhanced benefits formula.  In order to assess the merits of appellants' argument, we begin our discussion with an overview of the *Retired Employees* decision.

### A.     *Retired Employees, supra, 52 Cal.4th 1171*

In *Retired Employees*, the Supreme Court was asked by the United States Court of Appeals for the Ninth Circuit to address the abstract question of "'[w]hether, as a matter of California law, a California county and its employees can form an implied contract that confers vested rights to health benefits on retired county employees.'"  (*Retired Employees*, *supra*, 52 Cal.4th at p. 1176.)  The Supreme Court concluded that under certain circumstances and as long as no statute or ordinance would prohibit such arrangements, a county may be bound by an implied contract.  (*Id*. at pp. 1176, 1194.)

However, a county's ability to enter an implied contract regarding issues of employee compensation is limited by the constraints of section 25300.  (*Retired Employees*, *supra*, 52 Cal.4th at p. 1184.)  That statute provides as follows:  "The board of supervisors shall prescribe the compensation of all county officers and shall provide for the number, compensation, tenure, appointment and conditions of employment of county employees ….  [S]uch action may be taken by resolution of the board of supervisors as well as by ordinance."  (§ 25300.)  The Supreme Court explained the implications of this statute on implied contracts:  "Although … section 25300 does require that compensation of county employees be addressed in an ordinance or resolution, the statute does not prohibit a county from forming a contract with implied

12.

terms, inasmuch as contractual rights may be implied from an ordinance or resolution when the language or circumstances accompanying its passage clearly evince a legislative intent to create private rights of a contractual nature enforceable against the county." (*Retired Employees*, *supra*, at pp. 1176-1177.)  To summarize, the Supreme Court held that while it is possible that contractual rights regarding employee compensation may be implied from a resolution, the applicable resolution remains the essential source of the parties' contractual rights and obligations.  (*Id*. at p. 1185 [a court "must look to" resolutions to determine contract rights].)[3]

In *Retired Employees*, the facts of the underlying Ninth Circuit case provided a backdrop for some of the Supreme Court's discussion of this issue.  We briefly summarize those underlying facts.  Orange County began in 1985 to combine active and retired employees into a single, unified pool for purposes of calculating health insurance premiums.  That practice resulted in lower premiums for retirees, higher premiums for active employees and increased total contributions by the county.  Orange County continued the pooling arrangement each year from 1985 through 2007.  (*Retired Employees*, *supra*, 52 Cal.4th at p. 1177.)  In doing so, it "relied on the annual motions and resolutions of the Board [of Supervisors] setting health premiums during the relevant period, each of which specified health insurance rates only for that plan year." (*Id*. at p. 1178.)  In 2007, due to budgetary concerns, Orange County passed a resolution splitting the pool of active and retired employees, effective January 1, 2008.  The Retired Employees Association of Orange County (REAOC) filed suit in federal court to compel Orange County to continue the health insurance pooling.  REAOC conceded that the *express* provisions of the various memoranda of understanding (MOU's) and the Orange

---

**3**    Thus, no contract for county employee compensation may be created by conduct alone; implied terms, if any, must be implied from the language or circumstances of an express resolution or ordinance.

13.

County Board of Supervisors resolutions approving the MOU's were silent as to the duration of the unified pool. Nevertheless, REAOC argued that the county's long-standing and consistent practice of pooling active and retired employees, along with the county's representations to employees regarding a unified pool, evidenced an *implied* provision that the single, unified pool was a vested right. (*Id*. at pp. 1177-1178.) In other words, REAOC asserted that a vested right to the pooling arrangement was an *implied* *term* of the *existing contract* approved by the Orange County Board of Supervisors by resolution. This argument for an implied term was an important distinction noted by the Supreme Court: "REAOC … [sought] recognition only of an implied *term* of an existing contract (and not the recognition of an implied *contract*). That matters of compensation must be addressed by resolution does not necessarily bar recognition of implied terms concerning compensation. Under California law, contractual rights may be implied from legislative enactments [e.g., resolutions] under limited circumstances .…" (*Id*. at p. 1185.)

The Supreme Court then proceeded to explain why contractual rights may only be implied from a legislative enactment in limited circumstances. "A resolution by a county board does not only—or even primarily—establish contract rights. A resolution is also one of the means by which a board of supervisors exercises its authority to effect policy. [Citations.] The judicial determination whether a particular resolution was intended to create private contractual or vested rights or merely to declare a policy to be pursued until the legislative body shall ordain otherwise requires sensitivity to 'the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the [governmental body]. [Citation.] Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body.' [Citations.] 'Thus, it is presumed that a statutory scheme is not intended to create private contractual or vested

14.

rights and a person who asserts the creation of a contract with the statute has the burden of overcoming that presumption.' [Citation.]" (*Retired Employees*, *supra*, 52 Cal.4th at pp. 1185-1186.)

After reviewing several cases that applied this presumption, the Supreme Court in *Retired Employees* then articulated the following rule: "[W]e conclude generally that legislation in California may be said to create contractual rights when the statutory language or circumstances accompanying its passage 'clearly … "evince a legislative intent to create private rights of a contractual nature enforceable against the [governmental body]."' [Citations.]" (*Retired Employees*, *supra*, 52 Cal.4th at p. 1187.) "Although the intent to make a contract must be clear, our case law does not inexorably require that the intent be express. [Citation.] A contractual right can be implied from legislation in appropriate circumstances. [Citation.] Where, for example, the legislation is itself the ratification or approval of a contract, the intent to make a contract is clearly shown." (*Id*. at p. 1187.)

The Supreme Court's opinion in *Retired Employees* merely answered the legal question posed by the Ninth Circuit in the abstract. It did not decide the issue of whether the vested pooling rights alleged by REAOC could be "implied from Board resolutions, including those resolutions approving the [MOU's]" in that case. (*Retired Employees*, *supra*, 52 Cal.4th at p. 1188.) It *did* warn that much caution was needed in such cases to prevent the public (i.e., taxpayers) from being blindsided by unexpected financial obligations: "A court charged with deciding whether private contractual rights should be implied from legislation, however, should 'proceed cautiously both in identifying a contract within the language of a … statute and in defining the contours of any contractual obligation.' [Citation.] The requirement of a 'clear showing' that legislation was intended to create the asserted contractual obligation [citation] should ensure that neither the governing body nor the public will be blindsided by unexpected obligations." (*Id*. at pp. 1188-1189.)

15.

### B. No Implied Term Relating to Disability Retirement Benefits

We now turn to the issue of whether appellants have stated a cause of action premised on the theory that the settlement agreement had an implied term requiring payment of disability retirement under the enhanced benefits formula.

Preliminarily, we accept for purposes of this appeal that (i) the settlement agreement, as approved by the County, was tantamount to a *resolution* for purposes of invoking the analysis in *Retired Employees* and (ii) it was intended to create contractual rights. (See *Retired Employees*, *supra*, 52 Cal.4th at p. 1187 ["Where … the legislation is itself the ratification or approval of a contract, the intent to make a contract is clearly shown"].) However, moving past these initial hurdles merely brings us to the real difficulty for appellants' theory—the restrictive *language* of the settlement agreement. As *Retired Employees* explained, a county may only grant rights concerning employee compensation by means of a resolution or ordinance (*id*. at p. 1184; § 25300), and this means that a court is required to carefully consider the language of the relevant resolution or ordinance (here, the settlement agreement) when a party claims an implied contractual right (*Retired Employees*, *supra*, at pp. 1177, 1184-1189). Moreover, in order to prevent the governing body and the public from being "blindsided by unexpected obligations," the asserted contractual obligation must be *clearly* shown. (*Id*. at p. 1189.)

We now turn to the relevant language of the settlement agreement, applying the rule that when a contract is clear and explicit, the parties' intent is determined by reference to the language of the agreement. (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1385.) The settlement agreement enhanced or adjusted the formula for *service* retirement benefits, but said nothing about disability retirement benefits. Further, the language of the settlement agreement clearly and unequivocally expressed that *all* issues relating to the *Ventura II* litigation were being compromised and resolved solely by what was *expressly* set forth therein; and if that were not plain enough, it added that there were no other or unexpressed agreements. We briefly reiterate some of the key

16.

wording. In section 18, the parties stated that the settlement agreement "resolves all issues among the [p]arties" and the settlement agreement was both "complete and final" with respect to those issues. In section 19, the settlement agreement foreclosed the existence of additional, unexpressed obligations by stating as follows: "This Settlement Agreement constitutes the entire agreement among the [p]arties. *The [p]arties expressly acknowledge that no other agreements, arrangements, or understandings exist among them that are not expressed in this Settlement Agreement.*" (Italics added.) In section 20, the parties acknowledged that the settlement agreement was "clear and unambiguous," was reviewed by all counsel, and it was agreed that no "parol or other evidence outside this agreement" may be used "to explain, construe, contradict, or clarify the terms of the Settlement Agreement, the intent of the [p]arties or their counsel, or the circumstances under which the Settlement Agreement was made or executed." In section 21, the parties further agreed the settlement agreement could only be amended, modified or expanded by written agreement of those parties affected by the particular amendment sought.

By adopting this restrictive and limiting language of the settlement agreement, the County unequivocally manifested its intention to approve and authorize *only* those adjusted retirement benefits that were expressly set forth in the settlement agreement. The settlement agreement plainly said so, and it even specified there were no additional unexpressed agreements or arrangements. Under the circumstances, were we to allow a claim for an implied additional term conferring *other benefits and enhancements not expressly provided in the settlement agreement* (i.e., an enhanced benefits formula as to disability retirement), it would directly contradict the settlement agreement's unambiguous express terms and blindside the public with unexpected obligations. (*Retired Employees*, *supra*, 52 Cal.4th at p. 1189.)

Since the language of the settlement agreement foreclosed the possibility of additional unexpressed obligations on the part of the County, the trial court correctly held that appellants could not state a cause of action premised on an implied grant of other

17.

(i.e., disability retirement) enhancements.  Were we to hold otherwise, it would violate a fundamental rule of contract law that an implied term may not be found where it would contradict the express terms of the contract.  (See *Malmstrom v. Kaiser Aluminum & Chemical Corp*. (1986) 187 Cal.App.3d 299, 316; *Anderson v. Savin Corp*. (1988) 206 Cal.App.3d 356, 364.)[4]  Moreover, for purposes of a demurrer, a court is not required to accept as true a plaintiff's allegations of contractual terms where, in light of the written agreement attached to the pleading, such allegations would place a "clearly erroneous construction upon the provisions" of the attached agreement.  (*Marina Tenants Assn. v. Deauville Marina Development Co*. (1986) 181 Cal.App.3d 122, 128.)[5]  That is precisely the case here, since for the reasons noted above, the settlement agreement cannot be reasonably interpreted to include the implied provision for enhanced disability retirement benefits.  (See *Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at pp. 1384-1387 [demurrer properly sustained without leave to amend where plaintiff failed to offer a meaning of contract language to which it was reasonably susceptible].)

For the reasons set forth above, we conclude the trial court correctly sustained the demurrer to the first through fourth causes of action, since these claims were premised on the alleged implied term of the settlement agreement.

---

**4**     In its discussion of the law of implied contracts, *Retired Employees* referred to this rule, noting the general principle that "'implied terms should never be read to vary express terms' [citation]." (*Retired Employees*, *supra*, 52 Cal.4th at p. 1179.)  To put it another way, in a case such as this it would not be possible to satisfy the "clear" basis required by *Retired Employees* to infer an implied agreement.  (*Id*. at pp. 1177, 1187 ["clearly evince[d]"], p. 1188 ["'clear showing'"].)

**5**     We find our case distinguishable from the recent Court of Appeal decision in *Requa v. Regents of University of California* (2012) 213 Cal.App.4th 213, 228-233.  In *Requa*, unlike here, the pleading did not place a "'clearly erroneous construction upon the provisions of the [alleged] contract'" (*id*. at p. 231), and thus the allegations of implied terms had to be accepted as true for purposes of the demurrer and could not be resolved at the pleading stage.  Accordingly, the Court of Appeal held the trial court erred in sustaining the demurrer in that case.

This left only the fifth cause of action. The fifth cause of action alleged that, in the event there was no implied contractual right to have disability retirement benefits determined under the enhanced benefits formula, appellants allegedly should be granted such an enhancement based on the Supreme Court's decision in *Ventura*, *supra*,16 Cal.4th 483. We agree with respondents that the fifth cause of action is barred by the unambiguous terms of the settlement agreement. The settlement agreement provided, in addition to the terms noted above, that it disposes of all claims and issues among the parties, *including* those relating to or arising out of the *Ventura* case, and that the parties would forbear from bringing any future suit under the *Ventura* case. The forbearance agreement was applicable "to all items of compensation which were included or which could have been included in [the *Ventura II* litigation]." Further, the settlement agreement included language releasing and discharging all claims that were or could have been asserted in connection with the *Ventura II* litigation. We conclude that, as a matter of law, appellants have waived and released the claims alleged in the fifth cause of action.

Finally, no basis for leave to amend is apparent, and none has been presented to us by appellants. We conclude the demurrer was properly sustained to the third amended petition without leave to amend.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondents.

_____

Kane, J.

WE CONCUR:

_____

Cornell, Acting P.J.

_____

Franson, J.

19.

Filed 7/30/13

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GERALDINE CHISOM et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>　　　　　v.<br><br>BOARD OF RETIREMENT OF COUNTY OF FRESNO EMPLOYEES' RETIREMENT ASSOCIATION et al.,<br><br>　　　Defendants and Respondents. | F064259<br><br>(Fresno Super. Ct. No. 10CECG02372)<br><br>**ORDER GRANTING REQUEST FOR PUBLICATION** |

　　　　As the nonpublished opinion filed on July 16, 2013, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　　　　　　　　　Kane, J.

WE CONCUR:


_____

Cornell, Acting P.J.


_____

Franson, J.