Filed 6/26/15  Johnson v. Fresno County Employees' Retirement Assn. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GARY JOHNSON,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>FRESNO COUNTY EMPLOYEES'<br>RETIREMENT ASSOCIATION,<br><br>    Defendant and Respondent. | F069503<br><br>(Super. Ct. No. 12CECG00759)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Debra J. Kazanjian, Judge.

Moscone Emblidge Sater & Otis; Moscone Embridge & Otis, G. Scott Emblidge and Matthew K. Yan for Plaintiff and Appellant.

Reed Smith, Harvey L. Leiderman, Jeffrey R. Rieger and Dennis Peter Maio for Defendant and Respondent.

-ooOoo-

During the last few years of his employment with the County of Fresno (County), appellant Gary Johnson, was on assignment in Sacramento County. The County paid appellant a flat monthly allowance on top of his regular salary to cover appellant's out-of-town living expenses.

When appellant retired, respondent, the Fresno County Employees' Retirement Association (FCERA), calculated appellant's pension without including this flat monthly allowance as part of appellant's final compensation. Appellant filed a claim with the FCERA seeking to have the flat monthly allowance included in his pension calculation. The FCERA denied appellant's claim and declared the flat monthly allowance was not pensionable.

Appellant then filed a petition for writ of mandate in the trial court. The trial court denied appellant's petition on the ground that appellant's claim was barred by a class action settlement agreement. The court did not rule on whether the flat monthly allowance is "compensation earnable" and therefore included in the final compensation calculation. (Gov. Code,[1] §§ 31461, 31462.)

Appellant challenges the trial court's ruling on two grounds. Appellant argues that the release in the class action settlement agreement does not cover his claim because the flat monthly allowance reimbursement method did not exist when the agreement was signed. Rather, at that time, the County reimbursed employees for expenses incurred while on assignment on a dollar-for-dollar basis. Appellant further contends that the flat monthly allowance is pensionable compensation under the California Supreme Court case of *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483 (*Ventura*).

Contrary to appellant's position, his claim is barred by the class action settlement agreement. Accordingly, the judgment will be affirmed.

---

[1]     All further statutory references are to the Government Code.

2.

**BACKGROUND**

**1.**      *The CalWIN program and expense reimbursement policies.*

The California Work Opportunity and Responsibility to Kids Information Network, referred to as "CalWIN," is an online computer system and database used to administer public welfare and assistance programs throughout California. Employees from various California counties designed the CalWIN software and were required to live near the project site in Folsom.

Beginning in February 2000, Fresno County employees on assignment to the CalWIN project were reimbursed for actual, authorized expenditures. This policy was "'adopted to allow additional reimbursement to the employee as an incentive for volunteering to relocate.'" In May 2000, the County adopted the CalWIN policy under which "CalWIN workers could obtain cash advances and reimbursement on a monthly basis for meals and incidentals" and "did not need to provide proof of expenses unless it was requested."

In December 2001, the County modified its CalWIN reimbursement policy. The County "'did away with the dollar-for-dollar reimbursement scheme and, instead, put into place a flat monthly allowance … for staff members assigned to the project on a long-term basis.'" This allowance covered "'expenses including lodging/utilities, meals, and transportation/mileage', plus a 'gross-up' to account for taxes on these sums.'"

The County defined the flat monthly allowance as standardized amounts paid each month as an estimate of the employees' liability for the actual costs plus taxation of those costs in order to provide total reimbursement to the employee. The County's reason for this policy switch was to minimize tracking and reporting requirements. Nevertheless, each employee was required to certify under penalty of perjury the distance between the employee's county headquarters and the project site, the amount of monthly rent or mortgage at the project site, and that the employee will continue to maintain his or her primary residence at a net expense in excess of $200 per month. The employee was

3.

further required to semi-annually submit CalWIN expense claims providing rental receipts, a lease agreement, or other suitable documentation attesting to payment for lodging in the Sacramento area.

**2.**     ***The Ventura II litigation and settlement.***

Under the County Employees Retirement Law of 1937 (CERL), Government Code section 31450 et seq., retirement benefits are calculated based on a retired employee's "final compensation" as defined by sections 31460, 31461 and 31462 or 31462.1.  (*Salus v. San Diego County Employees Retirement Assn.* (2004) 117 Cal.App.4th 734, 736.)  This final compensation involves: compensation in the form of cash, rather than in the form of in-kind goods and services or time off; cash earned during a usual work period, as opposed to cash earned for overtime; and cash earned before retirement, rather than at or after retirement.  (*Ibid*.)

In *Ventura, supra,* 16 Cal.4th 483, the California Supreme Court defined certain aspects of final compensation under CERL.  There, a group of law enforcement officers argued their final compensation should include salary enhancements they received in cash from their county employer under the terms of a memorandum of understanding. These enhancements included a uniform maintenance allowance, bilingual premium pay, educational incentive pay, additional compensation for scheduled meal periods for designated employees, pay in lieu of annual leave accrual, and a motorcycle bonus.  (*Id.* at p. 488.)

The *Ventura* court extensively analyzed certain sections of CERL in order to ascertain what must be included in an employee's "final compensation" for purposes of calculating his or her pension.  The court explained that, while only cash payments received by an employee qualify as compensation within the meaning of Government Code section 31640, when cash is paid in lieu of other in-kind benefits, those payments qualify as compensation.  The court noted that the "Legislature has recognized that some employees receive remuneration other than wages or salary but has concluded that if

4.

those 'advantages' are not paid in cash, their value need not be included in 'compensation' for purposes of computing a pension. It has not done so for cash payments made in lieu of providing the same advantages in kind. When paid in cash, the payment is remuneration and, as it is not excluded, it is 'compensation' under section 31460." (*Ventura, supra,* 16 Cal.4th at p. 497.) Accordingly, the court held that, in addition to an employee's base salary, other forms of cash remuneration, excluding overtime, had to be included in calculating the employee's final compensation for purposes of a CERL retirement pension. Thus, the *Ventura* plaintiffs' final compensation included the premiums at issue, i.e., the uniform maintenance allowance, educational pay, bilingual pay, payments in lieu of accrued vacation time, etc. (*Ventura, supra,* at pp. 487-505.) The *Ventura* court disapproved a long-standing Court of Appeal decision upon which many counties had relied in making pension calculations. (*Id.* at pp. 505-507.)

Following *Ventura*, a number of class action lawsuits were filed in various counties alleging noncompliance with *Ventura* in the computation of retirement benefits. These cases were collectively referred to as the *Ventura II* litigation. (*Chisom v. Board of Retirement of Fresno County Employees' Retirement Assn.* (2013) 218 Cal.App.4th 400, 405 (*Chisom*).) The parties to the Fresno County *Ventura II* litigation, including appellant, reached a final settlement pursuant to a settlement agreement effective December 15, 2000.

Under this settlement agreement, the class received an increased service retirement benefit comprised of both a statutory benefit and a supplemental benefit for members retiring on and after January 1, 2001. The agreement purported to be a compromise that was meant to fully resolve and settle all of the Fresno County *Ventura II* lawsuits and all issues between the parties therein. (*Chisom, supra,* 218 Cal.App.4th at pp. 406-407.) The settlement was intended "to be complete and final with respect to the issues that it has resolved and that the settlement will not be changed on behalf of settling parties or the class members in response to later court developments, whether favorable or

5.

unfavorable." The parties specifically agreed "that petitioners and class members will forbear bringing any future demand, claim or lawsuit seeking to enlarge, define, narrow, or in any other way relate to the scope of the decision of the California Supreme Court in [*Ventura*], or the items of compensation to be included for benefit purposes under the 1937 County Employees Retirement law. All parties agree that this forbearance agreement applies to all items of compensation which were included *or which could have been included*" (italics added) in the *Ventura II* actions.

**3.     *Appellant's retirement increase request.***

Appellant participated in the CalWIN program and received a flat monthly allowance of $3,930 from March 2003 through December 2007. Appellant retired from County employment in August 2008. In calculating appellant's retirement benefits, the FCERA did not include the flat monthly allowance amount of approximately $47,000 per year.

In 2011, appellant filed a claim with the FCERA requesting that the flat monthly allowance be included as part of his final compensation in his retirement benefit calculation. The FCERA referred appellant's claim to a referee.

Following a hearing, the referee found in favor of appellant and recommended that the FCERA adjust appellant's pension to include the CalWIN flat monthly allowance. The referee concluded that the flat monthly allowance constituted compensation under section 31460 and, being analogous to a uniform allowance, was pensionable under *Ventura*. The referee also rejected the County's claim that the 2000 settlement barred appellant's claim because the reimbursement policy at issue was instituted after the settlement was reached.

After hearing argument, the FCERA rejected appellant's claim and the referee's proposed decision. The FCERA disagreed with the referee's interpretation of the CERL and the settlement agreement.

6.

**4.** *The trial court proceeding.*

Appellant petitioned the trial court for a writ of mandate. The trial court denied the petition finding the settlement agreement barred appellant's claim. The court determined the settlement agreement expressed the mutual intent of the parties to waive the right to present future unknown items for determination of whether they constitute compensation for purposes of calculation of retirement benefits.

## DISCUSSION

Appellant argues that his pension claim is not barred by the release in the 2000 class action settlement agreement because the CalWIN reimbursement policy was not adopted until 2001. Therefore, appellant contends, the calculation of his pension benefit was not a claim that could have been included in the class action.

The interpretation of a settlement agreement is governed by the principles applicable to any other contract. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) Where, as here, the interpretation of the agreement is based solely on its own language, the construction is a question of law. (*Id*. at p. 1166.)

The release and forbearance provisions in the settlement agreement are unambiguous. (*Chisom, supra,* 218 Cal.App.4th at p. 416.) The settlement agreement provides "that it disposes of all claims and issues among the parties, *including* those relating to or arising out of the *Ventura* case, and that the parties would forbear from bringing any future suit under the *Ventura* case." (*Ibid.*) This forbearance provision is applicable "'to all items of compensation which were included or which could have been included in [the *Ventura II* litigation].'" (*Ibid*.)

Appellant contends his claim could not have been included in the *Ventura II* litigation because the flat monthly allowance reimbursement method did not exist at that time. As support for his position, appellant notes that the pre-2001 policy was a non-taxed dollar-for-dollar reimbursement that required CalWIN participants to keep receipts of their actual incurred expenses while the 2001 flat monthly allowance was neither

tailored to actual expenses nor required receipts and was taxed. Appellant characterizes the 2001 flat monthly allowance as "a sea change" that was paid to CalWIN participants to compensate them for the added burden of working on a project several hours from home.

However, when the County first adopted the reimbursement policy for CalWIN participants in February 2000, one purpose was to allow additional reimbursement to the employees as an incentive for volunteering to relocate. Then in May 2000 the County modified the CalWIN policy to permit the CalWIN workers to obtain cash advances and reimbursement on a monthly basis for meals and incidentals. Moreover, the workers did not need to provide proof of expenses unless it was requested. Thus, before the *Ventura II* litigation settlement, the CalWIN participants received their reimbursement in advance of incurring the expenses and were not required to provide proof of their actual expenses.

When the County modified the reimbursement policy in 2001 to put the flat monthly allowance in place, the scheme was not materially changed from the May 2000 policy. As before, the participants were: paid in advance based on expense estimates; required to provide proof of payment for lodging; and required to certify the distance they traveled. Both before and after the *Ventura II* settlement, the County wanted to provide total reimbursement to the CalWIN workers and motivate them to relocate. The 2001 policy differed from the May 2000 policy in that the County, rather than the employee, estimated the monthly expenses in advance and no receipts were ever required for meals and incidentals. The reason behind this policy change was to simplify the paperwork. Also, the County grossed up the amount to cover the taxes on the flat monthly allowance to provide total reimbursement of expenses.

Thus, based on the policy in place in May 2000, a claim that the CalWIN reimbursement amounts were pensionable could have been asserted in connection with the *Ventura II* litigation. The administrative differences between the 2000 policy and the 2001 policy are not so significant that the potential claim did not exist when the litigation

was settled. Thus, as a member of the class in the *Ventura II* cases, appellant waived and released his claim and is barred from pursuing it. (Cf. *Chisom, supra,* 218 Cal.App.4th at p. 416.)

In light of this conclusion, we need not decide whether the FCERA erred when it refused to include the flat monthly allowance in calculating appellant's pension benefit.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

_____
LEVY, J.

WE CONCUR:


_____
HILL, P.J.


_____
GOMES, J.

9.